528 A.2d 244

**COMMONWEALTH of Pennsylvania**

v.

**Joyce S. GRANGER, Appellant.**

Superior Court of Pennsylvania.

Argued Jan. 13, 1987.

Filed July 10, 1987.

454

Joseph P. Grimes, Philadelphia, for appellant.

Leonard Deutchman, Assistant District Attorney, Philadelphia, for Com., appellee.

Before CIRILLO, President Judge, and ROWLEY and HOFFMAN, JJ.

## OPINION OF THE COURT

ROWLEY, Judge:

We are presented, in this appeal, with the question of whether the conduct of the police in making available to the accused, who is in their custody, the unrequested opportuni-

ty to consult with a law student, who everyone mistakenly believes to be a lawyer, invalidates the accused's subsequent waiver of her Sixth Amendment right to counsel.[1]

This appeal arises from incidents occurring on November 16, 1983. That afternoon, Mrs. Schumacher, a 68 year old woman, was found by her son stabbed, approximately 90 times, to death in their home. The same day, upon conducting an investigation, the Philadelphia Police learned that Charles Schumacher, the victim's son, had had an association with appellant. Appellant had occasionally solicited sex from Mr. Schumacher. Three weeks prior to the murder of Mrs. Schumacher, appellant had gone to the Schumacher house to solicit sex from Mr. Schumacher. He had declined, but agreed to go to the local speakeasy to purchase beer for her. Appellant was left alone with Mrs. Schumacher. Appellant then took from Mr. Schumacher's closet a briefcase containing a Magnum .357 firearm and $160. Appellant told Mrs. Schumacher that Mr. Schumacher had asked her to watch the briefcase for him. Appellant then left. Thereafter, when Mr. Schumacher returned home, he notified the police of the theft and appellant was quickly apprehended. Mrs. Schumacher was the only eyewitness to the theft and had given a statement to the police implicating appellant.

On the evening of the murder, two detectives went to appellant's home where she lived with her mother, Mrs. Granger, and two sisters. At that time, Mrs. Granger had already heard about the Schumacher murder. Mrs. Granger voluntarily admitted the detectives into her home. Appellant was not present then but had stopped home earlier that day. The detectives asked Mrs. Granger to walk through the house. Though the detectives did not have a

---

1. Appellant raises two other issues: whether the suppression court erred in failing to suppress appellant's statements as involuntary and not the product of a knowing, voluntary and intentional waiver of constitutional rights; and, whether the accumulative effect of various errors by the trial court denied appellant a fair trial. After a thorough review of the record and due consideration of these issues, we find that the trial court has adequately discussed and correctly decided these issues in its August 29, 1986 opinion. We will, therefore, limit our discussion to appellant's first issue.

search warrant, Mrs. Granger consented. In the bedroom which appellant shared with her two sisters, the detectives observed a pair of blood-soaked blue jeans on an ironing board which they confiscated. Mrs. Granger did not object.

The next day, an arrest warrant was issued for appellant's arrest. She was not located until late in the evening of November 27, 1983, at which time she was arrested. At that time, appellant was seventeen years old. Immediately after her arrest, appellant was placed on a drug maintenance program for three days to ease her withdrawal from methamphetamine addiction.

At the end of the three days, appellant notified the police that she wished to give a statement implicating her boyfriend in an unrelated murder. Appellant was given her *Miranda* [2] warnings. Thereafter both appellant and her mother signed a form containing her rights. Appellant stated that she did not want an attorney. She then talked with her mother for a short time. Appellant then began telling the police about the unrelated murder.

Suddenly, appellant changed the topic and began talking about the Schumacher murder. The police interrupted appellant and summoned someone from the Defender's Association office to counsel appellant. Although the police believed the person to be an attorney, he was in fact a law student interning with the Defender's Association. The student, James Waller, counseled appellant not to speak with the police. After Mr. Waller left, appellant was again given *Miranda* warnings, again waived her right to counsel, and told the police that while she had been present during the murder, her boyfriend had killed Mrs. Schumacher. Appellant was again advised of her *Miranda* rights and was then given a lie detector test, which she failed. Upon being confronted with the failure, appellant asked the police to question her again, during which time she told them that she had stabbed the victim, but only once.

2. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Following the denial of a motion to suppress her statements, appellant was tried by a jury and convicted of first degree murder, robbery, and possessing an instrument of crime. Post-trial motions were heard and denied. The trial court imposed a life sentence on the murder bill, with concurrent prison terms of five to ten years and one-half to five years for, respectively, robbery and possessing an instrument of crime. This direct appeal followed. Appellant requests that the verdict be set aside and a new trial granted.

The issue before us revolves around the suppression court's refusal to suppress appellant's statements to the police on the evening of November 30 to December 1, 1983. The suppression court determined, *inter alia,* that appellant knowingly, voluntarily, and intelligently waived her right to counsel prior to making all statements to the police. When reviewing the denial of a motion to suppress, our responsibility is

> "to determine whether the record supports the factual findings of the court below and the legitimacy of the inferences and legal conclusions drawn from those findings." ... In making this determination, this Court will consider only the evidence of the prosecution's witnesses and so much of the evidence for the defense as, fairly read in the context of the record as a whole, remains uncontradicted.

*Commonwealth v. Kichline,* 468 Pa. 265, 279, 371 A.2d 282, 290 (1976) [quoting *Commonwealth v. Goodwin,* 460 Pa. 516, 521, 333 A.2d 892, 895 (1975)] (citations omitted). With these standards in mind, we have reviewed the record of the suppression hearing and find, per the following analysis, no error by the suppression court.

Appellant specifically contends that because she consulted with a law student rather than with competent counsel, she was denied her constitutional right to effective assistance of counsel. Our review of the record discloses no evidence that appellant ever requested counsel. Appellant argues that her act of consenting to speak with someone

who she thought was a lawyer was an invocation of her right to counsel. She concludes, "[c]learly, one cannot waive ones right to counsel, after speaking to one presumed to be counsel but later determined to be a non-attorney." (Appellant's Brief, p. 13). Appellant cites no authority, and we know of none, to support this determination.

In *Commonwealth v. Hubble*, 509 Pa. 497, 504 A.2d 168, *cert. denied*, —— U.S. ——, 106 S.Ct. 3272, 91 L.Ed.2d 563 (1986), our Supreme Court addressed the situation where a suspect had ambiguously requested to contact an attorney. Hubble was a suspect in a triple homicide. He was interviewed by the State Troopers on three different occasions. On the second occasion, he was accompanied by his wife who advised him to get a lawyer. Hubble then stated that he wanted a lawyer. He was permitted to place phone calls to his attorney, who was not available, and to his parole officer, who advised him to contact the Public Defender's office. Hubble did not contact the Public Defender's office, nor did he request to make further phone calls. The Trooper then asked Hubble to give a taped statement. Hubble complied. The statement was noninculpatory. Then, as the Hubbles were about to leave, they stated that they wished to talk to each other and were given the opportunity to do so. About 45 minutes later, the Trooper told them that he had information placing Hubble at the scene of the crime. After again conferring with his wife, Hubble gave a taped confession. Prior to each statement, Hubble had been advised of his *Miranda* rights and had signed a written waiver of those rights.

In its analysis, the *Hubble* Court first noted the principle enunciated by the United States Supreme Court in *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), i.e., once an accused has invoked his right to counsel, interrogation by the authorities must immediately cease. The Court then discussed application of the *Edwards* rule in a later United States Supreme Court case, *Smith v. Illinois*, 469 U.S. 91, 105 S.Ct. 490, 83 L.Ed.2d 488 (1984). *Smith*

determined that the *Edwards* rule embodies two distinct inquiries.

> First, courts must determine whether the accused actually invoked his right to counsel.... Second, if the accused invoked his right to counsel, courts may admit his responses to further questioning only on finding that he (a) initiated further discussions with the police, and (b) knowingly and intelligently waived the right he had invoked.

*Id.* at 95–96, 105 S.Ct. at 492–93 (citations omitted).

Adopting this approach, the *Hubble* Court determined that the nature of Hubble's request for counsel and the circumstances preceding the request were equivocal and thus held that Hubble had not in fact invoked his right to counsel.

As in *Hubble*, we are concerned in the instant case with the threshold inquiry of the *Edwards* principle, i.e., whether appellant actually invoked her right to counsel. The record before us reveals that at no time did the police attempt to coerce appellant into waiving her constitutional right to counsel. In fact, it was appellant who initiated the interrogation in the first place. Though appellant requested to speak to the police regarding an unrelated murder, she was given her *Miranda* warnings as a precaution. Appellant conferred with her mother, who at all important times throughout the evening accompanied appellant. Appellant waived her rights and chose to speak to the police without counsel. When she changed the subject to the Schumacher murder, it was the police who stopped the interrogation and summoned a public defender. Appellant and her mother were left alone in a room. When Mr. Waller arrived, he was sent in to talk to them. Appellant never requested this opportunity. When Mr. Waller left, without speaking to the police, appellant still did not express any desire to have an attorney present even though Mr. Waller had strongly advised her not to speak to the police until counsel was appointed to her. We further note that appellant has had significant prior experience in the criminal system and had

on at least one previous occasion, when arrested for prostitution, exercised her right to remain silent.

Under these circumstances, we find no invocation, even ambiguous, of the right to counsel. Appellant's assertion that her passive consent to the presence of an attorney was a *de facto* invocation of her right to counsel is clearly without merit. We therefore conclude that appellant's initial waiver of counsel was intelligent, knowing, and voluntary. Having made an effective waiver, her waiver was not rendered invalid because the police, in a commendable exercise of caution, imposed on her the opportunity to speak with someone mistakenly believed to be an attorney. Thus, we do not cross the *Edwards* threshold and, accordingly, find no error by the suppression court.

Judgment of sentence affirmed.

HOFFMAN, J., concurs in the result.