565 A.2d 177

**COMMONWEALTH of Pennsylvania**

v.

**Kevin BROWN, Appellant.**

Superior Court of Pennsylvania.

Submitted July 31, 1989.

Filed Oct. 18, 1989.

John W. Packel, Asst. Public Defender, Philadelphia, for appellant.

Donna G. Zucker, Asst. Dist. Atty., Philadelphia, for Com., appellee.

Before McEWEN, BECK and MELINSON, JJ.

BECK, Judge.

This is an appeal by Kevin Brown from a judgment of sentence imposed by the Court of Common Pleas of Philadelphia County following his conviction for possession of a controlled substance and possession with intent to deliver a controlled substance. The sole question presented is whether the trial court erred by failing to suppress a bag of cocaine that appellant discarded after he was approached by two police detectives. After careful consideration, we affirm the judgment of the trial court.

Our standard of review is well established.

> When reviewing the denial of a motion to suppress our responsibility is "to determine whether the record supports the factual findings of the court below and the legitimacy of the inferences and legal conclusions drawn from those findings." ...In making this determination, this Court will consider only the evidence of the prosecution's witnesses and so much of the evidence for the defense as, fairly read in the context of the record as a whole, remains uncontradicted.

*Commonwealth v. Granger*, 364 Pa.Super. 453, 457, 528 A.2d 244, 246 (1987) (quoting *Commonwealth v. Kichline*, 468 Pa. 265, 279, 361 A.2d 282, 290 (1976)). Viewed in the light most favorable to the Commonwealth, the relevant facts are as follows.

On July 24, 1987, at about 10:15 A.M. Detective Furlong of the Philadelphia Police Department saw appellant park a car on the 1600 block of Point Breeze Avenue in Philadelphia and walk across a vacant lot onto the 2200 block of Fernon Street. Detective Furlong was aware that appellant previously had been arrested for burglary and he decided to keep a close watch on appellant to see if appellant would attempt another burglary. Furlong contacted his partner, Detective Feldmyer, and summoned him for assistance.

During the following half-hour, Furlong observed appellant walking up and down Fernon Street and talking to people. At about 10:50 A.M., appellant started to walk across the vacant lot toward his car which was parked at the curb of Point Breeze Avenue which abuts the vacant lot. At this point, Furlong began walking very quickly in appellant's direction. Meanwhile, Detective Feldmyer drove an unmarked police car over the curb and onto the sidewalk that bordered the vacant lot and stopped parallel to and a few feet in front of appellant's car. On the way to his car, appellant walked around Feldmyer's vehicle, pretended to trip, and tossed a plastic bag under his own car. Feldmyer said, "How you doing, Kevin." and appellant responded "What's up." Furlong retrieved the plastic bag and noticed that it contained small tubes packed with white powder. Furlong then placed appellant under arrest.

Appellant argues that the bag of cocaine should have been suppressed because it was abandoned as a result of unlawful police conduct. In order to determine whether the conduct of the police was unlawful, we must focus on the contact between appellant and the detectives immediately before appellant discarded the cocaine. We must decide whether Feldmyer's action in parking on the sidewalk next to appellant's vehicle when combined with Furlong's action in walking quickly in appellant's direction constitutes a seizure of the person within the meaning of the fourth amendment.

Encounters between the public and the police that do not involve a formal arrest may be categorized as mere encoun-

ters, non-custodial detentions, and custodial detentions. *Commonwealth v. Ellis*, 379 Pa.Super. 337, 353, 549 A.2d 1323, 1331 (1988). The term "mere encounter" refers to certain non-coercive interactions with the police that do not rise to the level of a seizure of the person under the fourth amendment. For example, a "mere encounter" occurs if the police simply approach a person on a public street in order to make inquiries. *See Commonwealth v. Hall*, 475 Pa. 482, 488, 380 A.2d 1238, 1241 (1977).

On the other hand, both non-custodial detentions and custodial detentions are seizures of the person that trigger fourth amendment protection. *See Dunaway v. New York*, 442 U.S. 200, 207–211, 99 S.Ct. 2248, 2253–2256, 60 L.Ed.2d 824 (1979); *see generally* 2 LaFave, *Search and Seizure* § 5.1 (2d ed.1987) and 3 LaFave, *Search and Seizure*, §§ 9.1–9.6 (2d ed.1987). A non-custodial detention or "forcible stop" occurs when a police officer temporarily detains an individual by means of physical force or a show of authority for investigative purposes. *See Commonwealth v. Williams*, 287 Pa.Super. 19, 22, 429 A.2d 698, 700 (1981). In order to justify a forcible stop under the fourth amendment, the police must point to specific and articulable facts that, taken together with the rational inferences from those facts, reasonably indicate that criminal activity may be afoot. *See Terry v. Ohio*, 392 U.S. 1, 20, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968). Custodial detention is a more severe form of government intrusion in which the conditions or duration of the police detention approximate the level of restraint associated with a formal arrest. *See Ellis*, 379 Pa.Super. at 356, 549 A.2d at 1332. In order to justify custodial detention, the police must have probable cause to believe that an offense has been or is being committed. *Dunaway v. New York*, 442 U.S. at 216, 99 S.Ct. at 2258.

In the case sub judice, appellant clearly was not subjected to custodial detention at the time he disposed of the cocaine. Appellant does not disagree but argues that prior to abandoning the cocaine, he was subjected to non-

custodial detention, i.e. a forcible stop, and that this forcible stop was illegal because the detectives had no reasonable suspicion that he had engaged in criminal activity. The Commonwealth responds that the conduct of the police constituted a non-coercive encounter and that appellant was not subjected to any form of seizure. Therefore appellant was not entitled to fourth amendment protection, and the question of whether the detectives had a reasonable suspicion that appellant had engaged in criminal activity was irrelevant. For the reasons that follow, we agree with the Commonwealth position.

In *Michigan v. Chesternut,* 486 U.S. 567, 108 S.Ct. 1975, 100 L.Ed.2d 565 (1988), the United States Supreme Court clarified the distinction between a seizure and a non-coercive encounter. In that case, the defendant began running after sighting a police cruiser, and the police drove alongside him for a short distance in order to investigate. After observing the defendant discard what appeared to be packets containing drugs, the police overtook the defendant and arrested him. The Supreme Court unanimously held that the police had not seized the defendant at the time he abandoned the contraband.

In the majority opinion, Justice Blackmun emphasized that: "the police can be said to have seized an individual 'only if in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.' " *Id.* at 573, 108 S.Ct. at 1979, 100 L.Ed.2d at 572 (quoting *United States v. Mendenhall,* 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980) (Opinion Announcing the Judgment of the Court)). Applying this test, Justice Blackmun concluded:

> [T]he police conduct involved here would not have communicated to the reasonable person an attempt to capture or otherwise intrude upon [the defendant's] freedom of movement. The record does not reflect that the police activated a siren or flashers; or that they commanded respondent to halt, or displayed any weapons; or that they operated the car in an aggressive manner to block

[the defendant's] course or otherwise control the direction or speed on his movement. While the very presence of a police car driving parallel to a running pedestrian could be somewhat intimidating, this kind of police presence does not, standing alone, constitute a seizure. Without more, the police conduct here—a brief acceleration to catch up with [the defendant] followed by a short drive alongside him—was not "so intimidating" that respondent could reasonably have believed that he was not free to go about his business.

*Id.,* 486 U.S. at 575–576, 108 S.Ct. at 1980–1981, 100 L.Ed.2d at 573 (citations and notes omitted).

We note that the *Chesternut* decision is consistent with Pennsylvania search and seizure jurisprudence. For many years, Pennsylvania courts have applied a similar test in order to determine whether a defendant abandoned property as a result of an illegal police seizure of the person. In *Commonwealth v. Hall, supra,* three police officers in an unmarked car observed the defendant standing in front of a tavern. The officers made a U-turn, double parked, and exited their vehicle with the intent of confronting the defendant. As the officers approached within ten feet of the defendant, he dropped a ball of Kleenex that contained foil packets stuffed with heroin. The Pennsylvania Supreme Court concluded that although the police had no basis for concluding that criminal activity was afoot, the heroin should not be suppressed because the activity of the police did not constitute a seizure. The Court noted that suppression would have been appropriate if "the circumstances [had] clearly demonstrated that the police officer was exercising force, i.e., showing authority, sufficient to warrant a conclusion by 'a reasonable man, innocent of any crime,' that the officer was attempting to effectuate a 'forcible stop' as opposed to a mere 'contact' ". *Id.,* 475 Pa. at 487–88, 380 A.2d at 1241 (quoting *Commonwealth v. Jones,* 474 Pa. 364, 373, 378 A.2d 835, 840 (1977), *cert. denied,* 435 U.S. 947, 98 S.Ct. 1533, 55 L.Ed.2d 546 (1978)). The Court concluded that by double parking and walking toward the

defendant, the three policemen would not have put a reasonable person on notice that he was not free to depart. *See also Commonwealth v. Bulling*, 331 Pa.Super. 84, 103, 480 A.2d 254, 264 (1984) (collecting cases on abandonment of property upon approach by police).

In the instant case, we find that the police conduct at issue was not significantly more coercive than the police conduct in *Hall* and in *Chesternut*. The encounter between appellant and the police took place along the side of a public street in an urban area during the day. Neither Furlong nor Feldmyer ever commanded appellant to halt, or touched appellant, or threatened appellant or displayed any weapon. Furlong simply walked in the appellant's direction while Feldmyer drove an unmarked vehicle onto the pavement and parked in close proximity to appellant's car. To borrow a phrase from *Chesternut*, the sight of the police vehicle driving over a curb and onto the sidewalk may have been "somewhat intimidating." Moreover, the detectives unmistakably indicated that they wanted to speak with appellant. Yet we cannot say that a reasonable person in appellant's position would have concluded that the detectives were prepared to use force to prevent him from leaving. Accordingly, we shall not disturb the trial court's decision to deny the suppression motion.

In arguing for the opposite conclusion, appellant relies primarily on two considerations. First, appellant notes that his confrontation with Furlong and Feldmyer on Point Breeze Avenue was not his first encounter with the two detectives. Appellant had previously come into contact with the detectives at the time he was arrested for burglary. We agree that prior contact between a defendant and a police officer may be relevant to the question of whether the police officer subjected the defendant to a forcible stop. This prior contact is one factor that should be considered when determining whether under the totality of the circumstances a reasonable person in the defendant's position would have felt restrained. In the case sub judice, however, the record indicates that the only prior contact Fur-

long and Feldmyer had with appellant was when they lawfully searched appellant after he had been arrested by other policemen on burglary charges. Under these facts, appellant's prior contact with the detectives was of minimal importance.

Appellant also relies on the passage in *Chesternut* where the Court explained that a seizure may occur where the police operate a car "in an aggressive manner to block [the defendant's] course or otherwise control the direction or speed of his movement." 486 U.S. at 575, 108 S.Ct. at 1980, 100 L.Ed.2d at 573. We recognize that under some circumstances the use of a police vehicle will have a restraining effect on a member of the public. For example, in *Commonwealth v. Greber*, 478 Pa. 63, 385 A.2d 1313 (1978), the defendant abandoned a bag of marijuana after a police car drove into a parking lot and pulled directly in front of the defendant's Ford Mustang. The suppression court found that the officer had positioned his car in such a way as to block the defendant from exiting the parking lot. On appeal, the Pennsylvania Supreme Court affirmed the decision to suppress the marijuana. *Cf. United States v. Kerr*, 817 F.2d 1384 (9th Cir.1987) (forcible stop occurred where police car pulled behind defendant who was backing out of a one-lane dirt driveway).

On the other hand, in the instant case, the police interference with appellant's freedom of movement was *de minimus*. The record does not indicate that the detectives blocked appellant's car or prevented appellant from reaching his car. Indeed, appellant walked around Feldmyer's vehicle and tossed a bag of cocaine under his own car. Feldmyer "controlled" appellant's speed and direction only in so far as appellant was forced to deviate by a few feet from the path he would otherwise have taken from the vacant lot to the street. We find that the police did not forcibly stop appellant when they caused him to alter his movements in this manner.

Since appellant was not subjected to a forcible stop, we need not consider whether the police had any reasonable

basis for concluding that criminal activity was afoot. The police did not violate appellant's constitutional rights, and the trial court did not err by finding that appellant did not abandon the cocaine as a result of police coercion.

Judgment of sentence affirmed.

McEWEN, J., concurs in the result.