619 A.2d 709

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Michael MORRIS.**

Superior Court of Pennsylvania.

Argued Oct. 22, 1992.

Filed Nov. 25, 1992.

Reargument Denied Feb. 2, 1993.

Hugh Burns, Jr., Asst. Dist. Atty., Philadelphia, for Com., appellant.

Paul George, Asst. Public Defender, Philadelphia, for appellee.

Before CIRILLO, MONTEMURO and TAMILIA, JJ.

CIRILLO, Judge:

The Commonwealth appeals[1] a Court of Common Pleas of Philadelphia County order suppressing 109 vials of crack cocaine found after a routine traffic stop. We reverse.

Michael Morris was charged with possession and possession with the intent to deliver a controlled substance. Morris was a passenger in a car stopped in mid-morning by Officer Larry Smart for failing to signal a right-hand turn. When Officer Smart approached the stopped car he saw Morris stuffing a brown paper bag under the seat. Officer Smart went around the car to the passenger's side and ordered Morris out of the car. The police officer looked into the car and found a brown paper bag containing clear vials. He testified that when he saw the vials he recognized, and it was later confirmed, that they contained crack cocaine. The police officer patted Morris down for weapons while the driver remained in the car with his hands on the dashboard as Officer Smart had ordered. Officer Smart then arrested Morris.

We are asked to determine whether an officer's order to a passenger to get out of a car, following a routine traffic stop,

---

1. The Commonwealth's right to appeal an unfavorable suppression order is not absolute. It is a qualified right. To accord a suppression order the attribute of finality necessary " 'to justify the grant of the right of appeal to the Commonwealth ...,' the Commonwealth [must] certif[y] in good faith that the suppression order terminates or substantially handicaps its prosecution." *Commonwealth v. Dugger*, 506 Pa. 537, 546–47, 486 A.2d 382, 386 (1985). The Commonwealth has certified here that the suppression order terminates or substantially handicaps its case. *Id. See also* 42 Pa.C.S.A. § 5105(a).

and the subsequent seizure of contraband under the passenger seat was reasonable under the facts of this case.

In reviewing an order granting a motion to suppress, we must first determine whether the suppression court's factual findings and legal conclusions are supported by the record. *Commonwealth v. Lopez*, 415 Pa.Super. 252, 609 A.2d 177 (1992) (citing *Commonwealth v. Vinson*, 361 Pa.Super. 526, 522 A.2d 1155 (1987)). To determine whether the findings of fact are supported by the record, we review only the evidence of the appellee and so much of the evidence of the appellant which, when read in the context of the record as a whole, remains uncontradicted. *Commonwealth v. Reddix*, 355 Pa.Super. 514, 513 A.2d 1041 (1986) (citation omitted). If the factual findings are supported by the record, then we may reverse only for an error of law. *Id.*

The Fourth Amendment to the U.S. Constitution and Article I, Section 8 of the Pennsylvania Constitution protect citizens from "unreasonable searches and seizures." Evidence derived from an unreasonable search or seizure is inadmissible at trial. *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). To determine whether the vials of crack cocaine were properly suppressed we must determine whether the police officer's search of the car was reasonable. We arrive at this determination by addressing each increment of the confrontation separately: 1) the initial stop of the motor vehicle for a traffic violation, 2) the officer's request that Morris get out of the vehicle, 3) the discovery of the brown bag containing crack vials, and 4) the search of the passenger compartment and the pat down of Morris.

A forcible stop of a motor vehicle by a police officer constitutes a seizure of a person and activates the protections of the Fourth Amendment of the U.S. Constitution. *Commonwealth v. Swanger*, 453 Pa. 107, 307 A.2d 875 (1973); *Commonwealth v. Brown*, 388 Pa.Super. 187, 565 A.2d 177 (1989). However, a forcible stop and seizure is not unreasonable under the Fourth Amendment where the officer has articulable and reasonable grounds to suspect, or probable

cause to believe that criminal activity may be afoot. *Swanger, supra; see Commonwealth v. Richards,* 458 Pa. 455, 327 A.2d 63 (1974). Here, the record establishes that the vehicle in which Morris was a passenger was stopped for a violation of the Motor Vehicle Code. Such a stop under these facts is permissible under 75 Pa.C.S.A. § 6308. The initial stop, therefore, was proper. *Commonwealth v. Elliott,* 376 Pa.Super. 536, 546 A.2d 654 (1988), *alloc. denied,* 521 Pa. 617, 557 A.2d 721 (1989); *see also Swanger, supra.* As this court stated in *Elliott,* "the more difficult question is whether the suppression court erred in concluding that [the officer's] order to [Morris], the passenger, to step from the vehicle constituted an unreasonable invasion in the absence of a reasonable suspicion that he was armed and dangerous." We disagree with the suppression court's conclusion that, regardless of the lawfulness of the vehicle stop, the officer had no justification for ordering Morris out of the car.

Concern over the safety of our police officers mandates that a police officer maintain the authority to order a driver out of a vehicle. In *Pennsylvania v. Mimms,* 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977), the Supreme Court found that an officer's order to a driver to get out of a vehicle, issued after the driver was legally detained for a motor vehicle violation, was not an unreasonable seizure when balanced against legitimate concerns for the officer's safety. *Id.* at 111, 98 S.Ct. at 333. The Court described the intrusion as "de minimis" as compared to the risks and hazards confronting an officer under these circumstances. *Id.* at 110–111, 98 S.Ct. at 333. "What is at most a mere inconvenience cannot prevail when balanced against legitimate concerns for the officer's safety." *Id.*

In *Elliott, supra,* this court determined that the same rationale applies to passengers in a lawfully stopped vehicle when the officer has an articulable basis to believe that criminal activity is afoot. 376 Pa.Super. at 549, 546 A.2d at 660. As the *Elliott* court observed, the *Mimms* case "makes it clear that the officer need not articulate any reason for ordering the driver from the vehicle when the vehicle is

lawfully detained for a traffic violation." *Id.* In *Elliott,* the officer did not simply order the passenger out of the vehicle as a matter of course. The officer "was able to articulate a tenable reason for his actions." *Id.* The officer observed beer on ice behind the passenger and empty beer bottles throughout the car. When the passenger told the officer that he was 19 years old, the officer had a sufficient basis for believing that criminal activity was afoot. *Id.*[2]

Similarly, the officer's actions in the case before us were justified after observing Morris's furtive movements in stuffing a brown bag under the front passenger seat of the vehicle. This action justified not only the command of the officer for Morris to get out of the car, but the subsequent search of the passenger compartment and frisk of Morris under *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)[3].

A search without a warrant is generally unreasonable. *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961); *Commonwealth v. Bosurgi,* 411 Pa. 56, 190 A.2d 304 (1963) *cert. denied,* 375 U.S. 910, 84 S.Ct. 204, 11 L.Ed.2d 149 (1963). There are, however, exceptions to the warrant requirement. One of those was articulated in *Terry,* where the Supreme Court held that a police officer can "stop and frisk" an individual for weapons on an articulable suspicion that wrong-doing may be afoot and that the subject may be armed. The *Terry* rationale is based upon the legitimate interest in allowing an officer to protect himself or herself.

2. Though not a question before us, we point out that there would appear to be no basis for distinguishing between an officer's authority to order a driver from a car, and an officer's authority to order a passenger from a car when the officer reasonably fears in either case for his or her safety or believes that criminal activity is afoot.

3. Morris argues that the Commonwealth waived the argument that the stop was a legitimate *Terry* stop and frisk by not raising it at the suppression hearing. We find that the assistant district attorney by citing Pennsylvania cases which rely on *Terry* amply raised the argument. In any case we are not bound to consider only legal arguments raised in the trial courts; we are free to consider any issue properly preserved on any legal grounds we find appropriate. Pa.R.A.P. 302(a). The Commonwealth vigorously raised the *issue* that suppression was inappropriate in this case.

In *Michigan v. Long*, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983) the Supreme Court extended the rationale of *Terry* to include the passenger compartment of a car, holding:

> [T]he search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant the officer believing that the suspect is dangerous.

*Id.* at 1049, 103 S.Ct. at 3481.

Turning to the case at hand, we find that the officer lawfully stopped the car in which Morris was riding for a violation of the Motor Vehicle Code. Once the car was stopped, Officer Smart acted reasonably in ordering Morris out of the car after he saw Morris push a bag under the seat. *Elliott, supra.* The officer's observation of Morris's actions created more than a mere guess; his observations supported a genuine belief that his safety was in jeopardy and, at the very least, articulable suspicion that the bag contained contraband or a dangerous weapon. *Terry, supra; Long, supra; Elliott, supra.*

The officer was positioned lawfully, and he was entitled to search the car for his own protection. *Terry, supra; Long, supra.* The fruits of that search are, consequently, admissible. *Katz, supra.*[4] The seizure of the bag

---

4. While we find that the search of the passenger compartment was reasonable under *Terry, supra,* and *Long, supra,* we note parenthetically that notwithstanding the officer's observations of Morris's furtive movement, seizure of the bag would still be permissible under the facts of this case. The record establishes that the bag was only partially stuffed under the passenger seat with exposed clear vials protruding out from under the seat. Accordingly, the officer would be justified in seizing the bag as the vials were in plain view and the seizure would be a continuation of the officer's prior justification of legally stopping the car for a motor vehicle violation. *Commonwealth v. Chamberlain,* 332 Pa.Super. 108, 480 A.2d 1209 (1984) (the plain view doctrine is not an independent exception to the warrant requirement, but rather, it is an extension of whatever the prior justification for the officer's access to the object may be).

and visible contraband, following the permissible stop and order for Morris to get out of the car, gave the officer reasonable suspicion to suspect that Morris was connected with criminal activity or that he may be armed and dangerous. As a result, Morris's pat down and arrest was likewise reasonable. *Terry, supra; Long, supra; Elliott, supra.*

We note that this case is distinguishable from *Lopez, supra,* a case recently decided by a panel of this court. In *Lopez,* after an initial lawful stop, the officer pressed his investigation on no articulable basis. This court held in *Lopez* that the ensuing search was unreasonable. In this case, seeing Morris push a bag under the seat could reasonably have given Officer Smart fear for his safety. No such basis was present in *Lopez.*

Order reversed. Remanded for proceedings consistent with this decision. Jurisdiction relinquished.

Decision rendered prior to MONTEMURO, J., leaving the bench.