J-S78013-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RAHMEEN JONES | : | |
| | : | |
| Appellant | : | No. 3014 EDA 2017 |

Appeal from the Judgment of Sentence August 11, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0004901-2016

BEFORE:   LAZARUS, J., McLAUGHLIN, J., and STEVENS*, P.J.E.

MEMORANDUM BY LAZARUS, J.:                    **FILED FEBRUARY 08, 2019**

Raheem Jones appeals from the judgment of sentence, entered in the Court of Common Pleas of Philadelphia, following his convictions of robbery (F-3)[1] and conspiracy.[2]  After review, we affirm on the well-reasoned opinion authored by the Honorable Glynnis D. Hill.

On the evening of February 24, 2016, as the victim walked down 17th Street in South Philadelphia, she was shoved to the ground and her purse was stolen by her attacker.  The victim, who suffered bruises and scrapes from the incident, immediately turned and saw a tall man with dreadlocks running with her purse towards Fitzwater Street.  The victim got up and chased after her attacker.   At the same time, Officer John Drozdowski, a member of the Philadelphia Police Department's Seventeenth District, who was driving his

---

[1] 18 Pa.C.S. § 3701(a)(1)(v).

[2] 18 Pa.C.S. 903(a).

---

*   Former Justice specially assigned to the Superior Court.

police cruiser, saw a group of males run across Fitzwater Street from 17th Street and jump into an orange Mitsubishi. The vehicle drove away at a high rate of speed, with the tires screeching. Officer Drozdowski then noticed the victim run out into the middle of Fitzwater Street from 17th Street, waving her arms and screaming. Officer Drozdowski immediately activated his lights and sirens and stopped the car after it turned right onto Colorado Street. As the officer exited his police vehicle, the victim ran up to him screaming that she had just been robbed. Officer Drozdowski approached the Mitsubishi and noticed a handbag on the driver's side backseat. He removed the driver (Jones' co-conspirator) from the vehicle, arrested him and searched him.[3] Officer Mark Trani, who was following Officer Drozdowski in his own police cruiser, approached the car and removed, searched and arrested the front-seat passenger, another co-conspirator. Jones was sitting in the passenger-side seat in the back of the vehicle next to the handbag. He was removed and arrested. The victim identified the handbag found in the vehicle as her stolen purse. Officers also recovered a black .22 caliber revolver from the back passenger-side floor where Jones was seated.

On September 16, 2016, Jones filed a motion to suppress all identifications of him, his statements, physical evidence taken from him at the time of his arrest, and his prior convictions. The court denied the motion. After a two-day jury trial, Jones was convicted of the above-stated offenses. Jones moved for a judgment of acquittal on both offenses, which the court

_____

[3] The police recovered drugs in the driver's groin area.

denied. On August 11, 2017, Judge Hill sentenced Jones to an aggregate term of 11½-23 months' incarceration with immediate parole on house arrest, followed by two years of reporting probation. Jones filed a timely notice of appeal[4] and court-ordered Pa.R.A.P. 1925(b) concise statement and supplemental statement of errors complained of on appeal. Jones presents the following issue for our consideration: Whether the evidence was insufficient to sustain a conviction for robbery and conspiracy. Appellant's Brief, at 6.

We rely upon the Judge Hill's opinion in affirming Jones' judgment of sentence. *See* Trial Court Opinion, 6/18/18, at 9-13. There was sufficient evidence to prove Jones was guilty of both robbery and conspiracy where: the

---

[4] We note that Jones' trial attorney, Vincent D. Roggio, was on administrative suspension at the time he filed Jones' notice of appeal – clearly an unauthorized practice of law under Pa.R.D.E. 217. Roggio failed to not only notify his client of his status with the bar, but also demonstrated lack of candor to the court. *See* Pa.R.Prof.C. 3.3(a)(1) (candor to court); Pa.R.D.E. 217(a) (duty to notify clients being represented in pending matters of administrative suspension and inability to act as attorney after effective date of suspension); Pa.R.D.E. 217(b) (duty to notify clients involved in pending litigation or administrative proceedings as well as attorney for adverse party in such matters or proceedings of administrative suspension and inability to act as attorney after effective date of suspension). Thus, we equate this situation to one where a fraud was perpetrated upon the court, through no fault of Jones. In the interest of fairness, we will consider Jones' notice of appeal as being properly filed. *See* Pa.R.A.P. 105 (b) ("An appellate court for good cause shown may upon application enlarge the time prescribed by these rules or by its order for doing any act, or may permit an act to be done after the expiration of such time, but the court may not enlarge the time for filing a notice of appeal[.]"); *but see* Note to Pa.R.A.P. 105 ("Subdivision (b) of this rule is not intended to affect the power of a court to grant relief in the case of fraud or breakdown in the processes of a court.").

victim saw a man flee from the crime scene; within moments of the attack, the officer saw an individual with two other men jump into an orange Mitsubishi down the street from the site of the robbery; the vehicle fled the scene at a high rate of speed; and, the vehicle was stopped within a block of the crime scene, with Jones in the backseat sitting next to the victim's purse. **See** 18 Pa.C.S. § 3701(a)(1)(v) (robbery requires proof that in course of committing theft, defendant threatened another with or intentionally put another in fear of immediate serious bodily injury); 18 Pa.C.S. § 903(a) (conspiracy requires proof that defendant entered into agreement with another to commit or aid in commission of crime; defendant shared criminal intent with other person; and overt act was committed in furtherance of conspiracy).

Moreover, Jones' argument that the victim never saw his face and did not positively identify him does not mean that the jury could not have found sufficient circumstantial evidence to prove that Jones was the perpetrator of the robbery. Finally, Jones' assertion that there were "major discrepancies in [the victim's] version of events and Officer Drozdowski's version" amounts to a weight of the evidence claim. **Commonwealth v. Tejada**, 107 A.3d 788 (Pa. Super. 2015) (witness credibility includes questions of inconsistent testimony which go to weight of the evidence, not sufficiency). Weight of the evidence issues must be preserved below in the trial court. **See** Pa.R.Crim.P. 607(A). Jones failed to preserve this issue; thus, we find it waived. **Commonwealth v. Ford**, 141 A.3d 547 (Pa. Super. 2016).

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/8/19

**FILED**

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA

2018 JUN 18 AM 11: 53

OFFICE OF JUDICIAL
CRIMINAL DIVISION
FIRST JUDICIAL DISTRICT
OF PENNSYLVANIA

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | CRIMINAL TRIAL DIVISION |
| | : | |
| | : | CP-51-CR-0004901-2016 |
| | : | |
| RAHMEEN JONES, APPELLANT | : | No. 3014 EDA 2017 |

## OPINION

This opinion addresses the issues Appellant Rahmeen Jones raises in his appeal. The Appellant's claims lack merit for the following reasons.

## I. CASE HISTORY

On February 24, 2016, police arrested the Appellant. On May 20, 2016, the Commonwealth filed a complaint and the Honorable Craig M. Washington held the following charges for court: Robbery (F3), Theft by Unlawful Taking (F1), Receiving Stolen Property (RSP)(F1), Carrying a Firearm Without a License (VUFA § 6106)(F3), Carrying a Firearm in Public (VUFA § 6108)(M1), and Simple Assault (M2).[1]

On September 16, 2016, the Appellant filed an Omnibus Pre-Trial Motion requesting a Motion to Suppress hearing.[2] On June 2, 2017, the Honorable Glynnis D. Hill denied the Appellant's Motion to Suppress Evidence.[3] On June 5, 2017, the Appellant had a jury trial.[4] On June 7, 2017, the jury found the Appellant guilty of Robbery (F3) and Conspiracy (F3). On August 11, 2017, the Court sentenced the Appellant to 11½ to 23 months incarceration on the Robbery offense with immediate parole to house arrest, plus two years consecutive probation.[5]

---

[1] Docket Sheet for CP-51-CR-0004901-2016.
[2] See the Appellant's Pretrial Omnibus Motions, filed September 16, 2016. Included were Motions to Suppress all identifications of the Appellant, the Appellant's statements, physical evidence taken from the Appellant at the time of the arrest, and the Appellant's prior convictions.
[3] See Docket Sheet for CP-51-CR-0004901-2016.
[4] The Appellant moved for a Judgement of Acquittal on June 6, 2017. The Court denied the motion.
[5] The Appellant was also sentenced to 11 ½ to 23 months incarceration and two years probation on the Conspiracy conviction, set to run concurrently to the Robbery sentence.

1

On September 11, 2017, the Appellant filed a Notice of Appeal to the Pennsylvania Superior Court. On October 4, 2017, the Court asked the Court Appointment Unit to assign the Appellant new counsel since trial counsel was administratively suspended.[6] On October 10, 2017, the Court vacated prior counsel and appointed new appellate counsel. On December 29, 2017, the Court ordered the Appellant to file a Statement of Errors Complained of on Appeal pursuant to Pa.R.A.P. 1925(b). On January 19, 2018, the Appellant filed a 1925(b) Statement requesting an extension to file a Supplemental Statement following receipt of the Notes of Testimony. On February 1, 2017, the Appellant filed a Supplemental Statement of Errors Complained of on Appeal raising the following issues:[7]

1. The suppression court erred and abused its discretion in failing to allow Appellant to introduce the testimony of the complainant at suppression hearing where the complainant previously testified and her prior testimony was in direct conflict with the officer who pulled over the vehicle Appellant was in. The evidence went to whether the officer had reasonable suspicion to pull over vehicle Appellant was in. Appellant was prejudiced by this decision as it prevented him from discrediting the officer where complainant's testimony was in direct conflict with the officer's testimony.
2. The court erred in denying the motion to suppress where the officer did not have reasonable suspicion to pull over vehicle that Appellant was in.
3. Any and all contraband recovered from that vehicle was a fruit of the poisonous tree and should be suppressed.
4. The evidence was insufficient to sustain a conviction for robbery and conspiracy where complainant was pushed from behind and did not see the face(s) of her attacker(s) and all of the other evidence against Appellant was wholly circumstantial and so contradictory that a reliable verdict could not have been reached.
5. The evidence was insufficient to sustain a conviction of robbery where complainant was pushed from behind and her purse fell to the ground and her purse was later taken from the ground without force or the threat of force. Complainant did not know nor did the evidence prove that the person who pushed her was the same person who took her purse.

---

[6] The Superior Court issued an Order on September 26, 2017, requiring the Court to determine whether appointed counsel Vincent Roggio, Esq., was reinstated from his August 26, 2017, suspension when he filed the Appellant's Notice of Appeal on September 11, 2017. The Order also required the Court to determine whether Roggio was representing the Appellant in connection with this appeal and, if not, to appoint new appellate counsel.
[7] Copied verbatim from the Appellant's Supplemental Statement of Errors Complained of on Appeal.

## II. FACTS

On February 24, 2016, the Complainant, April Buscio, was walking on 17th Street between 10:00 and 11:00 p.m. when she was shoved to the ground from behind and her purse was taken.[8] She turned and saw a tall man with dreadlocks running with her purse towards Fitzwater Street.[9] Buscio then got up and chased after him.[10]

Officer John Drozdowski was driving west on Fitzwater Street when he saw a group of males run across Fitzwater from 17th street and jump into an orange Mitsubishi.[11] The driver of the car drove away, tires screeching, at a high rate of speed.[12] Officer Drozdowski then saw the Complainant run out into the middle of Fitzwater Street from 17th Street waving her arms and screaming as she chased the Mitsubishi.[13] Drozdowski activated his lights and sirens.[14] After the Mitsubishi turned right on Colorado Street, Drozdowski stopped the vehicle.[15] As Drozdowski got out of his patrol vehicle, the Complainant ran up to him screaming that they had just robbed her.[16]

When Officer Drozdowski approached the driver, he saw a handbag on the driver's side back seat.[17] He then removed the driver from the vehicle, arrested him, and searched him.[18] The driver was identified as Rasheed Royster (the Appellant's co-defendant).[19] Officer Mark Trani approached the vehicle on the passenger side before he removed, searched, and arrested the front

---

[8] N.T. 6/6/17 at 29-31.
[9] Id. at 29-31, 45.
[10] Id. at 33.
[11] N.T. 6/5/17 at 95-97.
[12] Id. at 95-97, 144.
[13] Id. at 98-100, 147, 149, 173.
[14] Id. at 100.
[15] Id. at 100, 155, 213.
[16] Id. at 107, 176, 215-216.
[17] Id. at 108.
[18] Id. at 109.
[19] Id.

3

seat passenger (Jason Guy).[20] **The Appellant was sitting in the back seat on the passenger's side next to the handbag.[21]** He was also removed and arrested. **The Complainant identified the handbag in the backseat as her stolen purse.[22]** Officers also recovered a black .22 caliber revolver from the floor where the Appellant was seated.[23]

### III. DISCUSSION

I. **The Appellant's Claims Arising From the Suppression Hearing Lack Merit Because the Appellant Did Not Have a Privacy Interest In the Stopped Vehicle.**

The Appellant raises three claims relating to the Suppression Hearing. First, the Appellant claims that the Court erred when it denied him an opportunity to present the Complainant's testimony.[24] As for this claim, the Appellant alleges that the Complainant's testimony would have contradicted Officer Drozdowski's. He further alleges that the Complainant's testimony would have dispelled that Drozdowski had reasonable suspicion to stop the Mitsubishi. Second, the Appellant claims that the Court erred when it denied the Appellant's Motion to Suppress Evidence because the officer did not have reasonable suspicion to stop the Mitsubishi. Finally, the Appellant claims that contraband recovered from that vehicle should be suppressed as fruits of the poisonous tree. However, each of these claims should be dismissed because Officer Drozdowski acted within the scope of his authority when pulling over the Mitsubishi and the Appellant lacked both standing and a privacy interest in the vehicle.

It is well-settled that individuals are protected from unwarranted seizures under Article I § 8 of the Pennsylvania Constitution and the Fourth Amendment of the U.S. Constitution.

---

[20] Id. at 110-111.
[21] Id.
[22] Id. at 115.
[23] Id. at 115, 240, 242.
[24] See the Appellant's Supplemental 1925(b) Statement.

However, the police are authorized to temporarily seize an individual where "there is a reasonable police belief that criminal activity is afoot." Commonwealth v. Melendez, 676 A.2d 226, 28 (Pa. 1996). Moreover, the police officer must point to specific and articulable facts, in conjunction with rational inferences the officer derives from those facts, to warrant the initial stop. Commonwealth v. Arch, 654 A.2d 1141, 1144 (Pa. Super. 1995). Furthermore, In Commonwealth v. Sell, 470 A.2d 457 (Pa. 1983), the Pennsylvania Supreme Court held that a defendant charged with a possessory offense has automatic standing to litigate a motion to suppress evidence where evidence from that offense may have been the fruit of an unlawful seizure.

However, in order to prevail on the motion, the defendant must separately demonstrate a personal privacy interest in the area searched or the effects seized. Commonwealth v. Millner, 888 A.2dd 680, 691-92 (Pa. 2005). For example, in Commonwealth v. Powell, 994 A.2d 1096, 1099 (Pa. Super. 2010), the Superior Court held that the defendant did not have a reasonable expectation of privacy in the trunk of a vehicle because he was not the owner, driver, or connected to the car. Since the defendant could not demonstrate a privacy interest in the area searched or the effects seized, the Court denied the Motion to Suppress.

In our case, the Appellant was merely a backseat passenger in the vehicle.[25] Hence, he was not the owner, nor related to the owner of the vehicle.[26] Since the Appellant was not the owner, driver, or otherwise connected to the vehicle, he did not have a reasonable expectation of privacy Powell demands. Without a reasonable expectation of privacy in the area searched, the Appellant did not have standing, and his Motion to Suppress was properly denied.

---

[25] N.T. 6/2/2017 pg. 17, 21.
[26] Id. at 47, 50-51. See also Exhibit C-2, Pennsylvania Department of Transportation record showing the registered owner of the vehicle as Angel Lathore.

However, even if the Appellant had a privacy interest in the vehicle, his Motion to Suppress should be denied for the following reasons.

### A. Testimony from April Buscio at the Suppression Hearing would have been irrelevant as to whether Officer Drozdowski had reasonable suspicion to pull over the Mitsubishi.

The Appellant claims that the Court erred and abused its discretion when it denied the defense an opportunity to introduce the Complainant's testimony at the suppression hearing. The Court disagrees. It is true that defense counsel asserted at the hearing that the Complainant's testimony would conflict with Officer Drozdowski's.[27] However, the Complainant's testimony would not have totally refuted whether Drozdowski had reasonable suspicion to pull over the vehicle since he was authorized to stop the Mitsubishi.

The Pennsylvania Superior Court has held that "a forcible stop of a motor vehicle by a police officer constitutes a seizure of a person and activates the protections of the Fourth Amendment of the U.S. Constitution." Commonwealth v. Morris, 619 A.2d 709, 711 (Pa. Super. 1992); citing Commonwealth v. Swanger, 307 A.2d 875 (Pa. 1973); Commonwealth v. Brown, 565 A.2d 177 (Pa. Super. 1989). However, the Pennsylvania Supreme Court has further clarified that "police are permitted to stop and briefly detain citizens whenever they have a reasonable suspicion, based on specific and articulable facts, that criminal activity may be afoot." Commonwealth v. Allen, 725 A.2d 737, 740 (Pa. 1999). Furthermore, under 75 Pa.C.S.A. § 6308, an officer may stop a vehicle for a motor code violation. Morris, 619 A.2d at 711.

At the suppression hearing, defense counsel wanted to dispute that Officer Drozdowski saw the Complainant chasing the car.[28] During the hearing, counsel argued that Drozdowski "didn't make up his mind" to pull the Mitsubishi over until he actually saw the Complainant.[29]

---

[27] Id. at 48.
[28] Id. at 48-49.
[29] Id.

6

The Appellant wanted to contradict Drozdowski's testimony by calling the Complainant to testify at the suppression hearing. Defense counsel anticipated that the Complainant would have given the same testimony at the hearing that she gave at the trial. At the trial, the Complainant testified that she never saw the Mitsubishi on Fitzwater Street, that she only saw the vehicle after it was pulled over, that she did not hear a car screeching, and that she initially saw a police car on Colorado Street.[30] Counsel sought to use this testimony to contradict Drozdowski's testimony that he saw the Complainant chasing after the Mitsubishi.

However, as previously mentioned, the Appellant's first claim misses the mark. Even if Drozdowski had not actually seen the Complainant chasing the Mitsubishi, he still had reasonable suspicion to stop the vehicle. The major flaw in the Appellant's allegation is that Officer Drozdowski testified at the suppression hearing about specific and articulable facts that provided him with reasonable suspicion to stop the Mitsubishi regardless of whether he saw the Complainant. Drozdowski testified that **he saw several males running to a car and driving off at a high rate of speed with its tires screeching.**[31] **This observation alone provided him with reasonable suspicion that the fleeing males may have been involved with criminality.** Furthermore, even if these males did not provide Drozdowski with reasonable suspicion, **he had authority to stop the vehicle based on the motor vehicle code violations alone.** Since the Mitsubishi illegally screeched out of a parking spot, Officer Drozdowski was authorized to stop the driver for reckless driving.[32] Therefore, even if Drozdowski had not seen the Complainant, he had a valid reason to stop the vehicle. Since the Complainant's testimony was not dispositive (or

---

[30] N.T. 6/6/17 pg. 50, 56, 76, 35.

[31] Id. at 9, 12.

[32] During trial, Drozdowski noted that he had authority to stop the vehicle for careless or reckless driving and for not using a turn signal to pull out of the parking spot. N.T. 6/5/17 pg. 183.

7

totally relevant) in dispelling whether Drozdowski had a justification for stopping the car, the Appellant's first claim should be dismissed.

*B. The Court properly denied the Appellant's Motion to Suppress.*

The Appellant next claims that the Court erred in denying his Motion to Suppress because Officer Drozdowski did not have reasonable suspicion. However, this claim also lacks merit.

As previously stated, "police are permitted to stop and briefly detain citizens whenever they have a reasonable suspicion, based on specific and articulable facts, that criminal activity may be afoot." Allen, 725 A.2d at 740. Furthermore, under 75 Pa.C.S.A. § 6308, an officer may stop a vehicle for a motor code violation. Morris, 619 A.2d at 711.

During the suppression hearing, Officer Drozdowski articulated specific facts that provided reasonable suspicion that the occupants of the Mitsubishi may have been engaged in criminal activity. Drozdowski testified that he saw several males running to an orange Mitsubishi that sped off before turning onto Colorado Street.[33] Drozdowski further testified that he saw the Complainant chasing them on Fitzwater Street.[34] Drozdowski's testimony suggests that he had reasonable suspicion to at least investigate the occupants of the vehicle.

However, even if Drozdowski did not have reasonable suspicion that criminality was afoot, he still had a justification to stop the car based on motor vehicle code violations.[35] Simply put, Drozdowski was authorized to stop the driver for reckless driving. 75 Pa.C.S.A. §§ 3714, 3736.[36] Moreover, after Drozdowski stopped the vehicle, he was authorized to take further action under

---

[33] Id. at 9-12.
[34] Id. at 11.
[35] 75 Pa.C.S.A. § 6308.
[36] Officer Drozdowski noted in his trial testimony that he could have pulled over the vehicle for careless or reckless driving, or for the fact that the driver did not use his turn signals. 75 Pa.C.S.A. § 3334. N.T. 6/5/17 pg. 183.

the plain view doctrine when he observed the Complainant's purse in the car next to the Appellant.[37] For all of these reasons, the Appellant's second claim should be dismissed.

*C. The Appellant's third claim must fail because the stop was not illegal.*

The Appellant's third claim is that "any and all contraband recovered from that vehicle was a fruit of the poisonous tree and should be suppressed."[38] However, "a fruit of the poisonous tree argument requires an antecedent illegality" on the part of the state. Quoted in Commonwealth v. Diggs, 506 A.2d 431, 437 (Pa. Super. 1986). The Appellant's claim that the evidence recovered from the vehicle is "fruit of the poisonous tree" presupposes that Officer Drozdowski illegally stopped the occupants of the Mitsubishi. As previously explained, Drozdowski had reasonable suspicion and authority to stop the Mitsubishi because the driver violated the traffic code. Moreover, the Complainant's purse was in plain view on the back seat of the vehicle.[39] As there was no antecedent illegality, the Appellant has no grounds to raise a "fruit of the poisonous tree" argument. Therefore, his third claim should be dismissed.

II.     **There Was Sufficient Evidence for a Jury to Find the Appellant Guilty of Robbery and Conspiracy.**

The Appellant next alleges that the evidence was insufficient as a matter of law to find him guilty of Robbery and Conspiracy.[40] The Court disagrees.

It is well settled that "[t]he weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses." Commonwealth v. Hawkins, 701 A.2d 492 (Pa. 1997) [citing Commonwealth v. Jackson, 485 A.2d

---

[37] N.T. 6/2/17 pg. 16-17, 39-40. See Commonwealth v. Miller, 56 A.3d 424, 430-431 (Pa. Super. 2012) (the court applied the plain view doctrine to a beer bottle in the defendant's vehicle) (Of course, in our case, the Appellant did not even have a right to privacy in the vehicle.); Commonwealth v. Brown, 23 A.3d 544 (Pa. Super. 2011).
[38] See the Appellant's Supplemental Statement of Matters Complained of On Appeal.
[39] N.T. 6/2/17 pg. 40. See Miller, 56 A.3d 430-431 *supra.*
[40] See Appellant's 1925(b) Statement.

9

1102, 1104 (Pa. 1984)]. Furthermore, "when reviewing a sufficiency claim[,] the court is required to review the evidence in the light most favorable to the verdict winner[,] giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence." Commonwealth v. Widmer, 744 A.2d 745, 751 (Pa. 2000); see also Commonwealth v. Torres, 766 A.2d 342, 344 (Pa. 2001). Therefore, for there to be sufficient evidence to convict the Appellant, the Commonwealth must establish that each element of the crimes was met. In our case, the jury heard all the evidence and found the Appellant guilty of Robbery and Conspiracy.[41] We will now consider whether there was sufficient evidence to support each of these crimes.

The first crime the Appellant was convicted of was Conspiracy. In Pennsylvania, it is well-settled law that a conspiracy conviction requires proof of (1) an intent to commit or aid in an unlawful act, (2) an agreement with a co-conspirator, and (3) an overt act in furtherance of the conspiracy. Commonwealth v. Spotz, 716 A.2d 580, 592 (Pa. 1998).[42] Although the existence of an agreement is an essential element of conspiracy, it is generally difficult to prove an explicit or formal agreement. Commonwealth v. Dolfi, 396 A.2d 635, 638 (Pa. 1979). Therefore, such an agreement may be established inferentially by circumstantial evidence. Courts have inferred an agreement by looking at the relationships between the parties, the conduct or circumstances of the parties, or the overt acts of co-conspirators. Id. Furthermore, the requisite overt act need not be committed by the defendant. It need only be committed by a co-conspirator. Commonwealth v. Hennigan, 753 A.2d 245 (Pa. Super. 2000); Commonwealth v. Johnson, 719 A.2d 778 (Pa. Super. 1998). See also Commonwealth v. Finn, 496 A.2d 1254 (Pa. Super. 1985).

Likewise, an individual who engages in a criminal conspiracy is responsible for all actions that the co-conspirators commit in furtherance of the criminal endeavor. Commonwealth

---

[41] N.T. 6/7/17 pg. 30-31.
[42] See also 18 Pa.C.S. § 903

10

v. Lambert, 795 A.2d 1010 (Pa. Super. 2002)al denied). See also Commonwealth v. Burdell, 110 A.2d 193 (Pa. 1955) ("A conspirator is criminally responsible for the acts of his co-conspirators which are committed in furtherance of the common design even though he was not present when the acts were committed.") [citing Commonwealth v. Strantz, 195 A. 75, 79 (Pa. 1937)]. Pennsylvania Courts have found sufficient evidence to establish a conspiracy where: 1) a defendant came to a robbery scene together with two other robbers, left with them, and positioned himself so that he could see the robbery in progress;[43] 2.) where a defendant and co-conspirator entered a store, fled together, and were apprehended with stolen items;[44] and 3.) where a defendant had been drinking all day with a co-conspirator and was found leaning over the coin receptacle of a jukebox into which a screwdriver had been forced, in a tavern which had its door pried away.[45]

The second crime the Appellant was convicted of was Robbery. "A person is guilty of robbery if, in the course of committing a theft, he...inflicts bodily injury upon another or threatens another with or intentionally puts him in fear of immediate bodily injury."[46] "An act shall be deemed 'in the course of committing a theft' if it occurs in an attempt to commit theft or in flight after the attempt or omission."[47] "A person is guilty of theft if he unlawfully takes, or exercises unlawful control over, movable property of another with intent to deprive him thereof."[48]

We will now determine whether the Appellant robbed or conspired to rob the Complainant when applying the law to the facts of our case. During trial, the Complainant

---

[43] Commonwealth v. Carter, 414 A.2d 361 (Pa. Super. 1979).
[44] Commonwealth v. Gibson, 668 A.2d 552 (Pa. Super. 1995).
[45] Commonwealth v. Tingle, 419 A.2d 6 (Pa. Super. 1980).
[46] 18 Pa.C.S. § 3701(a)(1)(iv).
[47] 18 Pa.C.S. § 3701(a)(2).
[48] 18 Pa.C.S. § 3921(a).

11

testified that she was pushed to the ground from behind before her purse was pulled off of her shoulder.[49] She immediately got up and saw a tall man with dreadlocks running towards Fitzwater Street with her purse.[50] The Complainant also stated that she scraped her knee and was bruised when she was pushed to the ground.[51] Therefore, it is clear that the perpetrator who took her purse and ran towards Fitzwater committed Robbery.

However, while there was no direct evidence that the Appellant was the person who pushed the Complainant and took her purse, there are several reasons why the Complainant's and Drozdowski's testimonies were circumstantially sufficient enough for the jury to convict him of robbery via conspiratorial liability. First, Drozdowki saw "several" men run across Fitzwater Street and get into a car, and the Appellant was one of the three men in the car when it was pulled over.[52] Thus, the jury, no doubt, inferred that the Appellant was one of the men who was running. It is well settled that flight is evidence of a guilty conscience, and "may form the basis in connection with other proof from which guilt may be inferred." Commonwealth v. Coyle, 203 A.2d 782, 789 (Pa. 1964). Second, since the stolen purse was in the backseat of the car, it was not unreasonable for the jury to infer that one of the fleeing men had just robbed the Complainant.[53] Third, the Appellant was the only one in the back seat of the car next to the purse.[54] Fourth, and most importantly, the jury believed that the Appellant was part of a conspiracy to rob the Complainant. In summary, since the Appellant was one of the men running on Fitzwater Street, and the only person seated next to the stolen purse, the jury most likely inferred that the Appellant either robbed or conspired with the others to rob the Complainant.

---

[49] N.T. 6/6/17 pg. 29-33.
[50] Id. at 31-32, 41.
[51] Id. at 43.
[52] N.T. 6/5/17 pg. 95-98, 108.
[53] Id. at 114-115.
[54] Id. at 110-111.

12

In closing, **the actual robbery may serve as the "overt act" in furtherance of the conspiracy to commit robbery, since an overt act may be committed by any of the co-conspirators.** Hennigan, 753 A.2d at 253, *supra.* As previously explained, **an agreement can be inferred from the conduct, circumstances, or overt acts of the co-conspirators.** Dolfi, 396 A.2d at 638, *supra.* Three men fleeing across a street after one of them had just committed a robbery, jumping into a car, and pulling the car away with such force as to make the tires screech arguably provided enough circumstantial evidence in this case for the jury to infer an agreement between the parties. This is especially true if one considers the fact that the Complainant's purse was found right next to the Appellant. In the end, while the Complainant did not know who robbed her, given the totality of the circumstances, the jury believed there was sufficient evidence to convict the Appellant of Robbery through conspiracy liability.[55] For these reasons, the Appellant's fourth and fifth claims should be dismissed.

---

[55] See Commonwealth v. Lambert, 795 A.2d 1010 (Pa. Super. 2002), *supra.*

13

## CONCLUSION

First, the Court did not err when it denied the Appellant's request to introduce the Complainant's testimony at the suppression hearing. The Appellant argued that the Complainant's testimony would have contradicted that Officer Drozdowski had reasonable suspicion to stop the Mitsubishi that three males (including the Appellant) got into after the robbery. However, Drozdowski gave several reasons why he had reasonable suspicion to stop the vehicle regardless of what the Complainant's testimony may have added. Therefore, any testimony that the Complainant would have added would not have been dispositive or totally relevant to the Motion to Suppress hearing.

Second, the Court did not err when it denied the Appellant's Motion to Suppress Evidence because Officer Drozdowski had reasonable suspicion to stop the Mitsubishi and the stolen purse was in plain view on the back seat next to the Appellant.

Third, the Appellant's fruit of the poisonous tree argument fails because there was no antecedent police illegality. Furthermore, all of the Appellant's suppression claims lack merit because the Appellant does not have standing to challenge the car stop. The Appellant lacked standing because he did not own, drive, or have any other connection to the car. In short, he lacked a privacy interest to support his motion.

Finally, the evidence was sufficient to convict the Appellant of Robbery and Conspiracy. The Appellant and his co-conspirators fled across the street and jumped into a car after one of them had robbed the Complainant. The Appellant's conduct suggests that either he himself robbed the Complainant or that he was part of an agreement to rob the Complainant. His fleeing the scene with other perpetrators showed an intent to aid in the commission of the act, and the robbery itself by one of the co-conspirators served as an "overt act" in furtherance of the conspiracy. Hence,

14

regardless of who took the Complainant's purse, the jury apparently believed that the Appellant was responsible via conspiratorial liability.

For these reasons, the Appellant's claims should be denied.

By the Court,

_____
Glynnis D. Hill, Judge