J-S35043-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE:  A.S., a Minor | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: A.S., a Minor | : | No. 795 EDA 2015 |

Appeal from the Dispositional Order March 16, 2015
in the Court of Common Pleas of Philadelphia County,
Juvenile Division, No(s): CP-51-JV-0000215-2015

BEFORE:  FORD ELLIOTT, P.J.E., BENDER, P.J.E. and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:                    **FILED JUNE 30, 2016**

A.S., a minor, appeals from the Dispositional Order following his adjudication of delinquency for possessing a firearm as a minor and carrying a firearm on the streets of Philadelphia.[1]  We vacate the dispositional Order and discharge A.S.

On January 29, 2015, at about 12:10 a.m., Philadelphia Police Officer Andrew Miller ("Officer Miller"), while patrolling in his vehicle with Philadelphia Police Officer Deacon ("Officer Deacon"), responded to a radio dispatch.  The dispatch indicated that there were three black males in dark clothing, possibly trench coats, who were possibly armed.  Within about five minutes, Officer Miller observed A.S. and two other black males running across the street, near the 500 block of West Somerset Street.  One of the males was wearing what appeared to be a long coat.  Officer Deacon rolled

---

[1] *See* 18 Pa.C.S.A. §§ 6110, 6108.

down his window, and asked the males for their ages. At that point, one of the males took off running, while the other two remained at the scene. Officer Miller approached A.S., who was wearing a trench coat, and the other male. Officer Miller then drew his weapon, ordered the males not to move, and twice asked if either possessed a gun. Neither male responded. Believing that the males would cooperate, Officer Miller holstered his weapon, put them up against his vehicle, and frisked them. During the search, Officer Miller felt what he believed to be a weapon in A.S.'s pocket. Upon finding a firearm in A.S.'s pocket, Officer Miller placed A.S. under arrest.

A.S. filed a Motion to suppress the evidence seized during Officer Miller's search of his person. The juvenile court denied the Motion. The juvenile court adjudicated A.S. delinquent of the above-described offenses, and, on March 16, 2015, the juvenile court entered a dispositional Order placing A.S. in a residential facility. Thereafter, A.S. filed the instant timely appeal, followed by a court-ordered Pa.R.A.P. 1925(b) Concise Statement of Matters Compliance of on Appeal.

A.S. presents the following claim for our review:

> Did not the [juvenile] court err by denying [A.S.'s M]otion to [S]uppress where [A.S.] was subjected to an illegal stop and frisk solely on the basis of an anonymous tip, and where the detention was unsupported by reasonable suspicion or probable cause in violation of the Fourth and Fourteenth Amendments of the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution?

Brief for Appellant at 3.

A.S. claims that the juvenile court improperly denied his suppression Motion, "where [he] was stopped and subjected to an investigatory detention in the absence of reasonable suspicion." *Id.* at 11. A.S. points out that Officer Miller held him at gunpoint, and ordered him to raise his hands. *Id.* at 11-12. According to A.S., "[d]espite not seeing [A.S.] engage in any suspicious behavior, the officer put [A.S.] and the third male against the police car and frisked them, finding a firearm on [A.S.]" *Id.* at 12. A.S. asserts that the stop was illegal, as the police lacked responsible suspicion that he was engaged in illegal activity. *Id.* Further, A.S. argues that the officer frisked A.S. "absent reasonable suspicion or probable cause, the standard required to initiate a search[.]"[2] *Id.* at 18.

Our standard of review in suppression matters is well settled. "[W]e must determine whether the factual findings [of the suppression court] are supported by the record and, assuming there is support in the record, we are bound by the facts and may reverse if the legal conclusions drawn from

---

[2] In its Opinion, the trial court requested that the case be remanded. Specifically, the trial court stated the following:

> Based upon in depth legal research and review of the case law, balanced with the specific fact pattern in the matter *sub judice*, this court, respectfully, requests that the case be remanded and jurisdiction be relinquished back to the trial court to reverse it[]s ruling and enter an appropriate verdict consistent with this court's discovered findings.

Trial Court Opinion, 9/10/15, at 1.

- 3 -

those facts are in error." ***Commonwealth v. Pakacki***, 901 A.2d 983, 986

(Pa. 2006) (citation omitted).

There are three categories of interactions between police and a citizen

evaluated pursuant to Article I, Section 8 of the Pennsylvania Constitution:

> The first of these is a "mere encounter" (or request for information)[,] which need not be supported by any level of suspicion, but carries no official compulsion to stop or to respond. The second, an "investigative detention[,]" must be supported by a reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.

***Commonwealth v. Downey***, 39 A.3d 401, 405 (Pa. Super. 2012) (citation

omitted).

A.S. argues that the police lacked the required reasonable suspicion of

criminal activity necessary to justify an investigative detention.[3] When

---

[3] Our review confirms that Officer Miller effectuated an investigative detention of A.S.

> The numerous factors used to determine whether a detention has become an arrest are the cause for the detention, the detention's length, the detention's location, whether the suspect was transported against his or her will, whether physical restraints were used, whether the police used or threatened force, and the character of the investigative methods used to confirm or dispel suspicions.

***Commonwealth v. Stevenson***, 894 A.2d 759, 770 (Pa. Super. 2006). Here, as we will discuss, *infra*, A.S. was briefly detained at gunpoint; the detention took place on a public street; physical restraints were not used, and he was not initially transported. Thus, the record supports the determination that the police effectuated an investigative detention of A.S. ***See id.***

evaluating the legality of investigative detentions, Pennsylvania has adopted the holding of **Terry v. Ohio**, 392 U.S. 1 (1968), wherein the United States Supreme Court held that police may conduct an investigatory detention if they have reasonable suspicion that criminal activity is afoot. **In re: D.M**., 781 A.2d 1161, 1163 (Pa. 2001). In order to prove reasonable suspicion, "the police officer must be able to point to specific and articulable facts and reasonable inferences drawn from those facts in light of the officer's experience." **Commonwealth v. Cook**, 735 A.2d 673, 677 (Pa. 1999). "The determination of whether an officer had reasonable suspicion that criminality was afoot so as to justify an investigatory detention is an objective one, which must be considered in light of the totality of the circumstances." **Commonwealth v. Walls**, 53 A.3d 889, 893 (Pa. Super. 2012).

"To have reasonable suspicion, police officers need not personally observe the illegal or suspicious conduct, but may rely upon the information of third parties, including 'tips' from citizens." **Commonwealth v. Lohr**, 715 A.2d 459, 461 (Pa. Super. 1998). With respect to these third-party "tips," we have held that

> [r]easonable suspicion, like probable cause, is dependent upon both the content of information possessed by police and its degree of reliability. Both factors—quantity and quality—are considered in the "totality of the circumstances—the whole picture," that must be taken into account when evaluating whether there is reasonable suspicion. Thus, if a tip has a relatively low degree of reliability, more information will be

- 5 -

required to establish the requisite quantum of suspicion than would be required if the tip were reliable.

When the underlying source of the officer's information is an anonymous call, the tip should be treated with particular suspicion.

***Commonwealth v. Barber***, 889 A.2d 587, 593 (Pa. Super. 2005) (some internal quotations and citations omitted).

Keeping in mind our standard of review, the Commonwealth presented evidence that on January 29, 2015, at about 12:10 a.m., Officer Miller responded to a radio dispatch "for a person with a gun." N.T., 2/18/15, at 6-7. The dispatch described "[t]hree black males in dark clothing[,] possibly with trench coats, possibly armed." ***Id.*** at 7. Officer Miller and his partner, Officer Deacon, responded to the dispatch in their police vehicle. ***Id.*** at 9. According to Officer Miller, within about five minutes, "after doing some surveying[,] we found three males running across the street. It looked like the middle male had a long coat on. It was from a distance[.]" ***Id.***

Officer Miller drove up to the males, at which time Officer Deacon rolled down his window, and inquired as to their ages, "because they look[ed] young." ***Id.*** at 8-9. At that point, one of the males "took off running and fled eastbound." ***Id.*** Officer Miller exited his vehicle and approached A.S. (wearing a trench coat) and the other male, both of whom had remained at the scene. ***Id.*** Officer Miller drew his weapon, told the two males not to move, and then asked if either possessed a gun. ***Id.*** at 11-12.

Neither male responded to the question. *Id.* at 12. According to Officer

Miller,

> [a]t that point, it looked like they were going to be cooperative with me. They weren't going to run. I did put my gun back in my holster. I put my hands on both males, put them up against my car. I did a quick frisk of them and[,] in the left pocket, I believe it was blue jeans, but in the left blue jeans pocket of [A.S.] was a large bulge. I believed it to be a gun right away. It was a very large bulge. When I went into his pocket[,] there was a gun and two cell phones.

*Id.* at 9-10. Officer Miller indicated that there was a curfew in effect that

evening, and stated the following:

> You know it was late. So anyone that looks under the age of 17 or 16, you know, we can definitely stop and ask them their ages[,] and if there are curfews[,] we can either take them home or send them home.

*Id.* at 12.

Viewing the evidence in a light most favorable to the Commonwealth,

we conclude that Officer Miller had reasonable suspicion to effectuate a

*Terry* stop of A.S., based upon his suspicion that A.S. was in possible

violation of the curfew. However, our analysis does not end at this point.

We next must address whether Officer Miller's *Terry* frisk of A.S. was

supported by reasonable suspicion.

As this Court has explained,

> an officer may pat-down an individual[,] whose suspicious behavior he is investigating[,] on the basis of a reasonable belief that the individual is presently armed and dangerous to the officer or others. To validate a *Terry* frisk, the police officer must be able to articulate specific facts from which he reasonably inferred that the individual was armed and

dangerous. In determining whether a *Terry* frisk was supported by a sufficient articulable basis, we examine the totality of the circumstances.

*Commonwealth v. Gray*, 896 A.2d 601, 605-06 (Pa. Super. 2006); *see also Stevenson*, 894 A.2d at 772 (stating that, in assessing the propriety of a protective frisk, a reviewing court "must be guided by common sense concerns that give priority to the safety of the police officer during an encounter with a suspect where circumstances indicate that the suspect may have, or may be reaching for, a weapon.").

Our Supreme Court has explained that an anonymous tip, alone, cannot supply reasonable suspicion to stop and frisk a citizen, because an anonymous tip is unreliable. *Commonwealth v. Jackson*, 698 A.2d 571, 576 (Pa. 1997). Further, merely viewing a person who matches the description of the anonymous tip does not corroborate the tip's allegations of criminal conduct. *Id.* at 574-75 (citation omitted). Instead, when investigating an anonymous tip, the police need an independent basis to corroborate the tip's allegations of criminal activity. *Id.* at 574.

Here, Officer Miller testified that the area in which he stopped A.S. was a "very high robbery area." N.T., 2/18/15, at 9. When asked why he frisked A.S. and his companion, Officer Miller stated that, when one of the males took off running,

> [t]he other two males remained, one of them being [A.S.] He was wearing a long trench coat, which did match the original flash information from the radio call. At that point, since it was a person with a gun call[,] I had my hand on my gun[.] I pulled

it out and I told him not to move, show me your hands. I did ask them if they had a gun[,] no response. I asked them again: Do you have a gun. No response. **At that point, it looked like they were going to be cooperative with me. They weren't going to run. I did put my gun back in my holster.** I put my hands on both males, [and] put them up against my car. I did a quick frisk of them ….

\*　　　\*　　　\*

Well[,] the nature of the call was that there was a person with a gun. **The way they were acting was kind of funny. When I asked them twice if they had a gun and they did not respond[,] you could almost tell like they were nervous.** And so when I put him up against my car for safety[,] I obviously went down them very quickly and I noticed and felt the budge right away….

*Id.* at 9, 10 (emphasis added).

The fact that A.S.'s trench coat matched the description provided in the anonymous tip did not corroborate the tip's allegation of criminal conduct. *See Jackson*, 698 A.2d at 574-75. Further, Officer Miller's testimony that, while held at gunpoint, A.S. appeared "nervous," is not indicative of criminal conduct, where, at the time, A.S. was held at gunpoint. *See Gray*, 896 A.2d at 607 (recognizing that nervousness alone will not establish reasonable suspicion, but is a relevant factor to be considered in the totality of the circumstances). Finally, Office Miller acknowledged that he conducted the frisk *after* it appeared that A.S. would cooperate, and after Officer Miller had holstered his weapon. *See* N.T., 2/18/15, at 10.

Under the specific circumstances presented, we cannot conclude that Officer Miller articulated specific facts from which he could reasonably infer

that A.S. was armed and dangerous. *Cf. Commonwealth v. Wilson*, 927 A.2d 279, 284-85 (Pa. Super. 2007) (concluding that the defendant's "suspicious gestures and movements, in conjunction with the fact that he placed his hands inside his coat pocket as if he were reaching for something," could lead the police officer to reasonably conclude that his safety was in jeopardy); *Commonwealth v. Mesa*, 683 A.2d 643, 646 (Pa. Super. 1996) (determining that an officer had articulable suspicion the defendant might be armed and dangerous when he observed the defendant "moving around a great deal" in the passenger seat of a vehicle); *Commonwealth v. Morris*, 619 A.2d 709, 712 (Pa. Super. 1992) (finding officer had articulable suspicion the appellant might be armed and dangerous when he observed the appellant's "furtive movements in stuffing a brown bag under the front passenger seat of the vehicle.").

Thus, the investigative detention of A.S. for a possible curfew violation was supported by the required reasonable suspicion of criminal activity. However, Officer Miller's frisk of A.S. for weapons was not supported by sufficient observations of suspicious activity. Accordingly, we conclude that the juvenile court erred when it failed to suppress the fruits of Officer Miller's illegal search of A.S. We therefore vacate A.S.'s dispositional Order, and discharge A.S.[4]

---

[4] Without the weapon seized by Officer Miller, there is no evidence supporting A.S.'s adjudication of delinquency for firearms offenses.

J-S35043-16

Motion to Correct Omissions in the Record denied[5]; Dispositional Order

vacated; Appellant is discharged.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/30/2016

---

[5] The Notes of Testimony from the February 18, 2015 hearing are included in the certified record.