J-S48036-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA    :    IN THE SUPERIOR COURT OF
                                   :            PENNSYLVANIA
                                   :
          v.                              :
                                   :
                                   :
STANLEY PETROSKI                    :
                                   :
          Appellant              :      No. 2765 EDA 2023

Appeal from the Judgment of Sentence Entered August 15, 2023
In the Court of Common Pleas of Bucks County Criminal Division at
No(s): CP-09-CR-0001402-2022

BEFORE: STABILE, J., NICHOLS, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.:           **FILED MARCH 6, 2025**

Appellant, Stanley Petroski, appeals from the judgment of sentence of 18 to 36 months' incarceration and $2,866 in restitution, imposed after a jury convicted him of various offenses, including theft by unlawful taking, conspiracy to commit theft by unlawful taking, and receiving stolen property. On appeal, Appellant challenges the trial court's denial of his pretrial motion to suppress, the court's failure to grant a mistrial when allegedly inadmissible and prejudicial testimony was offered at trial, and the discretionary aspects of his sentence. After careful review, we affirm.

The trial court set forth a detailed summary of the facts and procedural history of this case, which we adopt herein. **See** Trial Court Opinion (TCO), 6/4/24, at 1-5. We only briefly note that Appellant's convictions stem from evidence that he and a cohort stole a "bill-to-bill cash exchange machine, which breaks larger bills into smaller denominations for use in change

machines," from a laundromat in Bucks County, Pennsylvania. *Id.* at 1. Surveillance video from inside the laundromat showed "two individuals … pulling the machine out of the wall." *Id.* Based on still photographs taken from that video, police created a "wanted poster" and, two days after the theft, they "responded to a 911 call identifying Appellant at a local Walmart." *Id.* at 2, 3. When Police Officer Michael Owen arrived, he observed Appellant and compared him to the photographs from the wanted poster, concluding that Appellant matched those images. *Id.* at 3, 10. Officer Owen asked Appellant for identification and, upon discovering that Appellant had an active warrant for his arrest, he placed Appellant in custody. *Id.* A subsequent search of Appellant's vehicle pursuant to a warrant revealed that not only was the car stolen, but also "the exchange machine [was] in the back of the vehicle[,] along with the Adidas hoodie Appellant wore on the night of the theft, mail addressed to Appellant, and assorted tools." *Id.*

After his arrest, Appellant was charged with the above-stated offenses, as well as criminal mischief and possessing an instrument of crime. Prior to trial, Appellant filed, *inter alia*, a pretrial motion to suppress, arguing that Officer Owen did not possess reasonable suspicion to detain and ultimately arrest him, as well as a motion "to preclude publication of Officer Owen's body camera footage of Appellant's arrest." *Id.* at 4 (footnote omitted). After a hearing on May 30, 2023, the court denied Appellant's motion to suppress and his case proceeded to a jury trial that same day. Ultimately, Appellant was convicted of the above-stated charges. The court scheduled his sentencing

proceeding for July 6, 2023, but Appellant failed to appear. A bench warrant was issued for his arrest, and he was subsequently taken into custody and sentenced on August 15, 2023, to the aggregate term set forth *supra*.

Appellant filed a timely motion for reconsideration of his sentence, which the trial court denied after a hearing. On October 24, 2023, Appellant filed a timely notice of appeal. He and the court also complied with Pa.R.A.P. 1925. Herein, Appellant states the following four issues for our review:

> 1. Did the [trial] court err by denying [Appellant's] [m]otion to [s]uppress his arrest when the police officer['s] alleged reasons for arresting [Appellant] were not supported by reasonable suspicion to believe he had committed a crime[?]
>
> 2. Did the [trial] court err by failing to order a mistrial after the jury saw photographs and/or videos of [Appellant] in handcuffs taken from a police officer's body cam?
>
> 3. Did the [trial] court err by failing to adequately cure the Commonwealth's error in making the jury aware that [Appellant] had been in custody, and by failing to grant a mistrial?
>
> 4. Did the [trial] court err in imposing a sentence that is punitive, excessive, and fails to differentiate [Appellant's] conduct from similarly situated defendants in Bucks County; that fails to consider mitigating evidence, such as [Appellant's] struggle with addiction and his age; and that fails to consider additional mitigating evidence that would have been presented had [Appellant's] [m]otion for [r]econsideration of [s]entence been granted?

Appellant's Brief at 6-7.

In assessing Appellant's issues, we have reviewed the certified record, the briefs of the parties, and the applicable law. Additionally, we have examined the well-reasoned opinion of the Honorable Jeffrey L. Finley of the Court of Common Pleas of Bucks County. We conclude that Judge Finley's

comprehensive opinion accurately disposes of the issues presented by Appellant.[1] Accordingly, we adopt Judge Finley's opinion as our own and affirm Appellant's judgment of sentence for the reasons set forth therein.

Judgment of sentence affirmed.

_____

[1] This is especially true given the brevity of Appellant's arguments before this Court. For instance, in his first issue, Appellant simply argues that Officer Owen lacked reasonable suspicion to detain him because, although the officer testified that he personally observed Appellant and concluded that Appellant matched the images of the thief from the wanted poster, the officer "did not approach [Appellant] immediately[,]" thereby "suggest[ing] that Officer Owen was not as certain as he claimed to be as to the identity of [Appellant] as being the person depicted in the … poster." Appellant's Brief at 21. Appellant cites no case law or other legal authority to support that this speculative argument demonstrates the officer lacked reasonable suspicion to detain him for further investigation. Additionally, in Appellant's second issue, he merely states, without any developed argument, that "a mistrial should have been declared due to the manifest necessity caused by prejudice to [Appellant] created by the jury['s] viewing images of [Appellant] in handcuffs." *Id.* at 23. Appellant's argument in support of his third issue is likewise sparse. There, he asserts that the trial court should have *sua sponte* declared a mistrial when a detective made a passing reference to Appellant's prior incarceration. *See id.* at 24. In rejecting this claim, Judge Finley relied, *inter alia*, on the fact that he immediately gave the curative jury instruction that was requested by defense counsel. *See* TCO at 14. On appeal, Appellant concedes that the curative instruction he asked for was provided, but baldly "contends that the curative instruction was inadequate," without any further elaboration. Appellant's Brief at 24. Finally, in Appellant's fourth issue challenging his sentence, he briefly states that the "court did not adequately consider" factors such as his addiction issues and that "[h]e wants to get his life together so that he can be reunited with his son." *Id.* at 20. However, Appellant recognizes that he presented evidence of these circumstances at the sentencing hearing, and he offers no explanation to support his claim that the court did not take them into account in fashioning his sentence. Given the lack of meaningfully developed arguments that Appellant presents to this Court herein, we conclude that Judge Finley's comprehensive opinion is more than sufficient to demonstrate that no relief is due.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>3/6/2025</u>

17 pp /

IN THE COURT OF COMMON PLEAS OF BUCKS COUNTY, PENNSYLVANIA
CRIMINAL DIVISION

COMMONWEALTH OF
PENNSYLVANIA,
Appellee

        v.

STANLEY PETROSKI,
Appellant.

:
:
:
:
:
:
:
:
:
:
:

CP-09-CR-0001402-2022

OPTIONAL

## OPINION

Stanley Petroski ("Appellant") appeals to the Superior Court of Pennsylvania from this

Court's Judgement of Sentence. Pursuant to Pennsylvania Rule of Appellate Procedure 1925(a),

this Court files this Opinion in support of its ruling.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

This case arises from the theft of a bill-to-bill exchange machine from a twenty-four-hour

coin-operating self-service laundromat in Feasterville, Bucks County. In the morning hours of

January 10, 2022, Srikanth Paidipally, the owner of Feasterville Laundromat, awoke to a phone

call from one of his employees. N.T. 5/20/2023, p. 80. The employee reported that the laundry's

bill-to-bill cash exchange machine, which breaks larger bills into smaller denominations for use in

the change machines, had been removed from the wall and was missing. *Id.* After Mr. Paidipally

arrived on-scene, he checked the laundry's interior surveillance footage and observed two

individuals, later identified as Appellant and his friend, Amber May, pulling the machine out of

the wall at around 3:00am. *Id.* at p. 81; Commonwealth's Exhibit C-3.

According to Amber May's testimony, on the night of the theft, she and Appellant arrived

at the laundromat to use its bathroom and otherwise "hang out." *Id.* at p. 89. After a while, they

1

noticed the exchange machine affixed to the wall with plywood and ultimately decided to steal it. *Id.* The two had some initial difficulty figuring out how to get it out of the wall, but after some experimentation, noticed that the plywood holding the machine in place was secured to the wall with screws. *Id.* at pp. 92-93. Using a drill, Appellant removed the screws on the plywood, causing the machine to come free of its housing. *Id.*

Once the exchange machine was free, the pair discovered that it was too heavy to carry out of the laundry by hand. *Id.* After some discussion, they decided to use one of the spare laundry carts to help load the machine into the back of Appellant's red Chevy Trailblazer. *Id.* at pp. 90, 93. Appellant managed the cart while May backed the SUV up to the front door, and the two made off with the $8,000 machine, along with the approximately $3,000 in bills contained within. *Id.* at pp. 83-85, 93-94.

After observing the foregoing on surveillance footage, Mr. Paidipally called 911 to report the theft. *Id.* at pp. 80-81. The report was forwarded to Detective Stephen Brookes of the Lower Southampton Police Department, who was then assigned as lead investigator. *Id.* at pp. 135-36. Pursuant to his investigation, Detective Brookes obtained Mr. Paidipally's surveillance footage and observed the same sequence of events. *Id.* at p. 136-37. Afterward, the Detective took several still images from the video, later introduced as Commonwealth's Exhibits C-6 through C-14. *Id.* at p. 137. Using a selection of these photographs to create a wanted poster, Detective Brookes distributed it to the Bucks and Montgomery County investigators and the Southampton Township Crime Watch webpage. *Id.* at pp. 138-39; Commonwealth's Exhibit C-15. Thereafter, he received multiple Crime Watch tips identifying the photographed individuals as well as the vehicle they were driving. N.T. 5/30/2023, p. 140.

On January 12, 2022, at approximately 7:30pm, Officers Michael Owen and Steven Ambs of the Bensalem Township Police Department responded to a 911 call identifying Appellant at a local Walmart. *Id.* at pp. 125-26; Commonwealth's Exhibit C-44. Officer Owen located Appellant using the Crime Watch wanted poster, pulled him aside, and secured his identification. *Id.* at pp. 13-14. After his information returned an active probation violation warrant, Officer Owen placed Appellant into custody. *Id.* at pp. 14, 127-28. Among the items discovered on Appellant's person was a car key on a skull keychain. *Id.* at pp. 128, 130.

Detective Brookes was notified of Appellant's arrest and responded to the Walmart to locate the red Trailblazer. *Id.* at p. 140. After scouring the parking lot, Detective Brookes located the vehicle, which was identified as stolen. *Id.* at pp. 140-41. The vehicle was transported to the Bensalem impound lot where Detective Brookes later searched it pursuant to a warrant. *Id.* at p. 142. Ultimately, the Detective discovered the exchange machine in the back of the vehicle along with the Adidas hoodie Appellant wore on the night of the theft, mail addressed to Appellant, and assorted tools. *Id.* at pp. 142-44. Detective Brookes photographed these discoveries, which were later introduced as Commonwealth's Exhibits C-18 through 31.

The Detective also took DNA samples from the Trailblazer's steering wheel, gear shifter and interior surfaces as well as from the exterior surfaces of the exchange machine. *Id.* at p. 147. The Detective also dusted for fingerprints. *Id.* Later analysis of the DNA samples identified Appellant as a major contributor of the DNA on the steering wheel and gear shifter. N.T. 5/31/2023, pp. 29-30. To conclude his investigation, Detective Brookes retrieved the key discovered on Appellant's person upon arrest and obtained the vehicle owner's permission to try the key in the Trailblazer's ignition. *Id.* at p. 152. The key started the vehicle. *Id.*

By the time police recovered the exchange machine, it was severely damaged and functionally useless. N.T. 5/30/2023, pp. 84-85. According to May, after she and Appellant left the laundromat, they drove the machine to a friend's house in Philadelphia where they used drills, prybars, grinders, and screwdrivers to break it open. *Id.* at pp. 94-95. While these efforts were met with mixed success, the pair was ultimately able to breach portions of the machine and remove most of the cash within. *Id.* at p. 145; Commonwealth's Exhibits C-32 to 37.

On January 21, 2022, Appellant was charged, *inter alia*, with one (1) Count of Theft by Unlawful Taking,[1] one (1) Count of Conspiracy to Commit Theft by Unlawful Taking,[2] one (1) Count of Receiving Stolen Property,[3] one (1) Count of Criminal Mischief,[4] and one (1) Count of Possession of an Instrument of Crime.[5] On May 8, 2023, Appellant filed an Omnibus Pre-Trial Motion requesting, among others, suppression of his arrest and all evidence secured thereby. A hearing was held on May 18, 2023, where the Suppression Motion was deferred to the start of trial on May 30, 2023. All other defense motions were either withdrawn or resolved by agreement of counsel.

On May 30, 2023, this Court held a hearing in advance of trial on the remaining pre-trial matters, including Appellant's Suppression Motion and a Motion *in limine* to preclude publication of Officer Owen's body camera footage of Appellant's arrest.[6] After testimony from Detective Brookes and Officer Owen, this Court denied Appellant's Suppression Motion, finding sufficient

---

[1] 18 Pa.C.S. §3921(a).
[2] 18 Pa.C.S. §903.
[3] 18 Pa.C.S. §3925(a).
[4] 18 Pa.C.S. §3304(a)(5).
[5] 18 Pa.C.S. §907(a).
[6] Appellant also insists this Court made a pre-trial ruling precluding mention of Appellant's incarceration at the time police secured the Trailblazer key from his effects. *See*, Concise Statement, ¶9(B). However, neither the transcript from the pre-trial hearing on May 30, 2023, nor the preceeding record, disclose a formal ruling on the matter.

4

basis for Appellant's initial stop at the Walmart. N.T. 5/30/2023, p. 28 This Court further deferred its ruling on the body camera issue for later in the trial. *Id.* at pp. 22, 25.

Appellant then proceeded to a jury trial from May 30-31, 2023, where he was ultimately convicted of the above-referenced charges. Sentencing was deferred to July 6, 2023. However, Appellant failed to appear for sentencing on that date, and this Court issued a bench warrant for his arrest. Appellant was ultimately apprehended, and on August 15, 2023, was sentenced to not less than eighteen (18) to no more than thirty-six (36) months' incarceration, with $2,866 in restitution to Srikanth Paidipally. On August 16, 2023, Appellant filed a Post-Sentence Motion for Reconsideration of Sentence. A hearing was held, and on September 27, 2023, this Court denied Appellant's motion. On October 24, 2023, Appellant appealed to the Superior Court. This Court then directed Appellant file a Concise Statement of Errors Complained of on Appeal the same day.

However, due to a transition in counsel in the meantime, trial transcripts were never ordered. On December 8, 2023, this Court issued its initial Opinion that the appeal was therefore waived. On March 21, 2024, the Superior Court issued an Order remanding the matter to this Court for supplemental proceedings. On March 22, 2024, this Court issued a second Concise Statement Order.

## II.     CONCISE STATEMENT OF MATTERS COMPLAINED OF ON APPEAL

On May 7, 2024, in accordance with Pennsylvania Rule of Appellate Procedure 1925(b) – and after an extension of time to do so – Appellant filed his Concise Statement of Errors Complained of on Appeal, set forth, in relevant part, *verbatim* herein:

> A.     The trial court erred, as a matter of law, by denying Defendant's Motion to Suppress his arrest which was not supported by reasonable suspicion, and therefore in violation of the rights of Defendant under the Fourth Amendment of the United States Constitution and Article 1, Section 8 the Pennsylvania Constitution. The police officers' alleged reasons for arresting defendant at the Walmart Store in January, 2022 were not supported by

5

reasonable suspicion to believe he had committed a crime and accordingly any and all evidence obtained as a result of his illegal arrest should have been suppressed.

B.      The trial court erred, as a matter of law, by not properly curing the Commonwealth's failure to conform to the Court's Pre-Trial Ruling against mentioning to the jury that Defendant was a prisoner at the Bucks County Correctional Facility at the time a search warrant was served by the Commonwealth to obtain car keys to a vehicle that defendant had been allegedly driving on the day the underlying criminal offense occurred. The trial court's decision in this regard violated the defendant's right to Due Process under the Fourth Amendment of the United States Constitution and under Article 1, Section 8 the Pennsylvania Constitution inasmuch as the jury was made aware that defendant was in custody at some point prior to the trial and could thereby infer defendant was guilty of this or some other criminal offense thereby depriving defendant of a fair trial.

C.      The trial court erred, as a matter of law, by failing to order a mistrial after the jury saw photographs and/or videos of the defendant in handcuffs taken from the body camera of one of the Commonwealth's police witnesses in violation of defendant's Due Process rights under the Fourth Amendment of the United States Constitution and Article 1, Section 8 the Pennsylvania Constitution, thereby depriving defendant of a fair trial.

D.      The trial court erred in imposing a sentence that, under the circumstances, was excessive, unreasonable, and an abuse of discretion. Specifically, the trial court violated the discretionary aspect of sentencing in the following respects:

      a)      The trial court's sentence is punitive, excessive, and fails to differentiate the defendant's conduct from similarly situated defendants in Bucks county [*sic*];

      b)      The trial court failed to give any meaningful consideration to mitigating evidence presented by the defendant, including his struggle with addiction and his age.

      c)      The trial court erred by failing to grant the defendant. request for reconsideration of sentence which deprived defendant of an opportunity to present additional evidence by way of mitigation that could have resulted in a more lenient sentence.

## III.  DISCUSSION

### A.  *Standard of Review*

Appellant's first challenge is to this Court's denial of his pre-trial motion for suppression.

The Superior Court's review of suppression denials

> is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. [The Court is] bound by the suppression court's factual findings so long as they are supported by the record . . . . Where, as here, [an appellant] is appealing the ruling of the suppression court, [the Court] may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains

6

uncontradicted. [The Court's] scope of review of suppression rulings includes only the suppression hearing record and excludes evidence elicited at trial.

*Commonwealth v. McMahon*, 280 A.3d 1069, 1071 (Pa. Super. 2022).

Appellant's second and third challenges appear to allege error in this Court's failure to declare a mistrial after the jury (1) heard testimony referencing Appellant's pre-trial incarceration and (2) saw photographs of Appellant in handcuffs.[7] Under Pennsylvania Rule of Criminal Procedure ("Pa.R.Crim.P.") 605, "[i]t is within a trial judge's discretion to declare a mistrial *sua sponte* upon the showing of manifest necessity." *Commonwealth v. Kelly*, 797 A.2d 925, 936 (Pa. Super. 2002). Accordingly, "absent an abuse of that discretion, [the Superior Court] will not disturb his or her decision." *Id.*

Finally, Appellant challenges his sentence as, among other things, excessive and insufficiently considerate of Appellant's mitigating evidence. A defendant has no absolute right to appeal when challenging the discretionary aspects of a sentence. *See Commonwealth v. Crump*, 995 A.2d 1280, 1282 (Pa. Super. 2021). A sentence will not be disturbed "absent a manifest abuse of discretion." *Commonwealth v. Edwards*, 194 A.3d 625, 637 (Pa. Super. 2018). To meet this high burden, "the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision." *Id.* Alternatively stated, an appeal is permitted if there is a substantial question as to whether the sentence was appropriate under the sentencing code. *See, id.*

---

[7] Appellant's third challenge uses the language of mistrial directly, while the second challenge alleges only that this Court erred in "not properly curing" testimony regarding Appellant's incarceration. *Compare* Concise Statement, ¶9(B) *with id.* at ¶9(C). However, as Appellant does not specify what a proper cure to that testimony would have been, this Court will interpret the gravamen of ¶9(B) to raise essentially the same claim as ¶9(C) – namely, that this Court should likewise have declared a mistrial.

7

A substantial question arises when an appellant sets forth "a plausible argument that the sentence violates a provision of the sentencing code or is contrary to the fundamental norms of the sentencing process." *Id.* Sentencing courts determine what factors favor mitigation or aggravation of a sentence and have the discretion to sentence accordingly. *See Commonwealth v. Bowen*, 975 A.2d 1120, 1128 (Pa. Super. 2009). Critically, so long as the sentencing court cites the relevant aggravating factors for sentence on the record and those factors are legitimate, a sentence will not be disturbed. *See, id.*

**B. This Court Did Not Err in Denying Appellant's Motion to Suppress His Arrest Because His Stop and Subsequent Arrest Were Supported by Reasonable Suspicion and Probable Cause.**

Appellant first challenges the circumstances surrounding his initial stop by Officer Owen and his subsequent detention on reasonable suspicion grounds. Specifically, he argues that because his stop was not supported by reasonable suspicion, this Court should have granted his motion to suppress his arrest and all evidence obtained therefrom. As articulated by the Pennsylvania Superior Court,

> [t]he Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution protect citizens from "unreasonable searches and seizures, including those entailing only a brief detention." *Commonwealth v. Strickler*, 563 Pa. 47, 757 A.2d 884, 888 (2000). *See also Commonwealth v. Morris*, 422 Pa.Super. 343, 619 A.2d 709, 711 (1992). To secure the right of citizens to be free from such intrusions, courts in Pennsylvania require law enforcement officers to demonstrate ascending levels of suspicion to justify their interactions with citizens to the extent those interactions compromise individual liberty. *See Commonwealth v. Beasley*, 761 A.2d 621, 624 (Pa.Super.2000). For this purpose, our Supreme Court has defined three forms of police-citizen interaction: a mere encounter, an investigatory detention, and a custodial detention. *See Commonwealth v. Boswell*, 554 Pa. 275, 721 A.2d 336, 340 (1998).

*Commonwealth v. Reppert*, 814 A.2d 1196, 1201 (Pa. Super. 2002).

In differentiating between these forms, a court must determine whether a seizure of the person has occurred. *Id.* A seizure usually results when "the demeanor and conduct of the police

8

would have communicated to a reasonable person that he or she was not free to decline the officer's request or otherwise terminate the encounter." *Id.* at 1201-02. If no seizure has occurred, the interaction is a mere encounter, and no suspicion on the part of police is necessary. *Beasley*, 761 A.2d at 624.

However, if seizure has occurred, the court must evaluate the coerciveness of the police's conduct to determine whether it is in investigatory or custodial detention. *Commonwealth v. Strickler*, 757 A.2d 884, 889 (Pa. 2000). If the interaction "subjects an individual to a stop and a period of detention but is not so coercive as to constitute the functional equivalent of an arrest," it is an investigatory stop that need only be supported by reasonable and articulable suspicion. *Id.* However, if the interaction serves the functional equivalent of an arrest, it is a custodial detention that must be supported by probable cause. *Id.*

Here, there is no dispute that Officer Owen subjected Appellant to an investigatory stop on January 12, 2022.[8] Accordingly, the remaining question is whether the stop was supported by reasonable suspicion. Considering the evidence adduced at the suppression hearing, this Court concludes that there was sufficient basis for Officer Owen to stop Appellant and take him into custody thereafter.

At the suppression hearing, Officer Owen testified that he responded to the Bensalem Walmart pursuant to a 911 call reporting the suspects from the Crime Watch poster were there. N.T. 5/30/2023, p. 12. The call also gave a physical description of both suspects, including their

---

[8] During their initial interaction, Officer Owen pulled Appellant aside and asked for his ID. N.T. 5/30/2023, p. 14; Commonwealth's Exhibit CS-7. Although Appellant was not yet under arrest, it was clear that Appellant was not "free to decline the officer's request or otherwise terminate the encounter." *Reppert*, 814 A.2d at 1201-02. Accordingly, Appellant was seized, but under circumstances far less coercive than a formal arrest. Therefore, Appellant was subjected to an investigatory stop. *Strickler*, 757 A.2d at 889.

9

sex, race, clothing, and hair color. *Id.*; Commonwealth's Exhibit CS-7. Additionally, Officer Owen had his own copy of the Crime Watch poster containing photos of the suspects taken directly from the laundromat's surveillance footage. *Id.* at pp. 8-9, 13.

Finally, the Officer testified that based on his personal observations of Appellant at the time he was stopped, he concluded that Appellant matched both the 911 description and the Crime Watch images provided to him. *Id.* at pp. 13, 17-18. *See, also*, Commonwealth's Exhibit CS-6. On balance, this Court agrees that the 911 description, Crime Watch photos, and Officer Owen's observational comparisons of Appellant to those sources provided ample basis for a reasonable and articulable suspicion that Appellant was involved in criminal activity. Accordingly, Appellant's stop was proper under the Fourth Amendment.

To the extent Appellant also challenges the validity of his ensuing arrest, the challenge must likewise be rejected. As noted above, custodial detentions (i.e., arrests and any detention serving the functional equivalent to an arrest) must be supported by probable cause. *Strickler*, 757 A.2d at 889. Probable cause to arrest exists where the circumstances known to the officer are such that a man of reasonable caution would be warranted in his belief that the suspect has committed or is committing a crime. *Commonwealth v. Calabrese*, 184 A.3d 164, 166 (Pa. Super. 2018).

Here, Appellant was arrested after the biographical information he provided to Officer Owen returned an active warrant for his arrest due to prior probation violations N.T. 5/30/2023, p. 14. Because the initial retrieval of Appellant's identification was proper under the Fourth Amendment, the subsequent discovery of Appellant's warrant afforded Officer Owen the probable cause necessary to detain him. Accordingly, this Court did not err in denying Appellant's suppression motion, and his arguments to the contrary should be dismissed.

### C. This Court Properly Cured Testimony Indicating Appellant Was Incarcerated While Police Searched the Chevrolet Trailblazer.

Appellant's second issue challenges this Court's failure to declare a mistrial following

certain testimony from Detective Stephen Brookes. The declaration of a mistrial

> is necessary only when "the incident upon which the motion is based is of such a nature that its unavoidable effect is to deprive the defendant of a fair trial by preventing the jury from weighing and rendering a true verdict." *Commonwealth v. Parker*, 957 A.2d 311, 319 (Pa.Super.2008), *appeal denied*, 600 Pa. 755, 966 A.2d 571 (2009). A mistrial is inappropriate where cautionary instructions are sufficient to overcome any potential prejudice. *Id.*

*Commonwealth v. Lopez*, 57 A.3d 74, 83-84 (Pa. Super. 2012) (quoting *Commonwealth v. Bedford*, 50 A.3d 707, 712-13 (Pa Super. 2012). Stated differently, where an incident prejudices the defendant, mistrial is appropriate only if cautionary instructions are insufficient to overcome the risk of that prejudice. Here, this Court is satisfied that the curative instruction it gave to the jury was sufficient under the circumstances.

By way of useful comparison, the Pennsylvania Superior Court reviewed a virtually identical claim in the case of *Commonwealth v. Padilla*, 923 A.2d 1189 (Pa. Super. 2007). In that case, the defendant was charged with having sexual intercourse with his girlfriend's fifteen-year-old daughter. *Id.* at 1191. Prior to trial, defense counsel moved for, and secured, a ruling *in limine* precluding any reference to the defendant's prior incarceration. *Id.* at 1192. Despite this ruling, however, the arresting officer testified that the defendant had "[a]pparently ... just got[ten] out of jail," at the time of his arrest. *Id.*

Defense counsel immediately objected and moved for mistrial at sidebar. *Id.* The trial court was initially inclined to grant the motion, but ultimately relented upon the Commonwealth's suggestion of a curative instruction. *Id.* at 1192-93. The trial court instead denied the motion for mistrial and advised the jury to simply "disregard the remarks made by this witness at this particular time." *Id.* at 1193. After further briefing by the parties the next morning, the trial court

11

reaffirmed its holding that its instruction to the jury was sufficient to cure any prejudice to the defendant.[9] *Id.*

Beginning with its prejudice analysis, the Superior Court quickly concluded that the inadvertent testimony from the arresting officer prejudiced the defendant. Of particular relevance to its analysis was the trial court's initial ruling excluding all references to the defendant's prior incarceration. *Id.* at 1193. The purpose of a motion *in limine*, noted the Court, is to (1) "preclude evidence from ever reaching a jury that may prove to be so prejudicial that no instruction could cure the harm to the defendant[;]" and (2) provide "counsel with a basis upon which to structure trial strategy." *Id.* at 1194 (quoting *Commonwealth v. Noll*, 662 A.2d 1123, 1125 (Pa. Super. 1995)). These facts, and the testimony's tendency to inculpate the defendant in criminal activity, rendered the trial court's reversal of its pre-trial ruling particularly prejudicial. *Id.* at 1193-96.

Finding the testimony to be prejudicial, the Superior Court next evaluated the sufficiency of the trial court's instruction, ultimately finding it wanting. Specifically, the Court analyzed the issue as follows:

> Based on our review of the trial transcript, we find the circumstances surrounding the court's ruling to be troubling and the instruction itself too vague to have cured the prejudice. The trial court had granted Appellant's motion *in limine* and, upon violation of its order, agreed to a mistrial. Pressed by the prosecutor, however, the trial court instead opted to give a cautionary instruction and await further argument. The record suggests that the jury may have heard the side bar conference during which the trial court reversed itself. Moreover, the trial court's instruction did not

---

[9] Specifically, the trial court concluded that

> [t]he inadvertent reference to Appellant's prior jail time was a passing remark, not intentionally elicited by the Commonwealth. The witness did not say why Appellant was in prison. The Commonwealth did not attempt to take advantage of the remark. While this remark made by the witness was unfortunate, given the nature and circumstance in which it occurred, we think that the curative instruction was sufficient to eradicate any prejudice resulting from this reference. The jury was directed to disregard the witness' remarks and we can presume that they followed the court's instructions.

*Padilla*, 923 A.2d at 1193.

12

specifically direct the jury to disregard Officer Bealer's remark. "Apparently he just got out of jail." Then, despite the instruction, the prosecutor resumed his examination of Officer Bealer by repeating the officer's testimony that "Mom was upset," thereby allowing the jury to hear again testimony the trial court had just instructed them to disregard.

The purpose of a pre-trial motion *in limine* is to prevent prejudicial evidence from reaching the jury, based on the theory that "once the 'skunk is in the box,' the odor is ineradicable." Blumenkopf, 16 N.Eng.L.Rev. at 173 (quotations omitted). Given the circumstances in this case, we conclude that the only remedy available to remove the prejudice to Appellant was for the trial court to declare a mistrial and to relist the case for trial before a different jury.

*Id.* at 1196 (internal record citations and paragraph numbers omitted).

In essence, the Superior Court ultimately found the trial court's instruction insufficient because (1) there was a specific motion *in limine* precluding the testimony; (2) the trial court initially favored mistrial but reversed itself upon being pressed by Commonwealth; (3) the cautionary instruction did not specifically direct the jury to disregard the witness' specific remark; and (4) despite the instruction, the Commonwealth resumed examination right where the challenged testimony left off.

Here, Detective Brookes gave similar passing testimony referencing Appellant's prior incarceration. Specifically, in response to a Commonwealth question about how he retrieved the key to the Chevy Trailblazer, he testified that he "served the search warrant at the Bucks County Prison." N.T. 5/30/2023, p. 149. Accordingly, because this statement has a tendency to direct the jury's attention to Appellant's prior incarceration, this Court will assume its prejudicial nature. However, as to the adequacy of this Court's curative instruction, none of the circumstances underlying the *Padilla* Court's ultimate conclusion are present here. Accordingly, this Court finds its instruction to have been a sufficient cure.

First, despite Appellant's contention to the contrary, there was no specific ruling *in limine* regarding the prior incarceration issue. No such order appears on the docket, and no such ruling is

13

disclosed in the record. For example, in his Omnibus Pre-Trial Motion, Appellant raised a Motion to Suppress Arrest, a Motion to Dismiss Pursuant to Pa.R.Crim.P. 600, and a Motion to Suppress Statements. The arrest suppression was litigated at the May 30, 2023 hearing, along with a new Motion *in limine* regarding the arrest body camera footage. Meanwhile, both the Rule 600 Motion and Motion to Suppress Statements were resolved at the May 18, 2023 hearing. Accordingly, the only pre-trial motions litigated prior to trial were the arrest suppression and body camera motions. N.T. 5/30/2023, pp. 20-28. This Court appreciates that the defense may have wished to avoid testimony as to Appellant's prior incarceration, but at no point was this desire reflected in a formal pre-trial motion or ruling.[10] *See,* Criminal Trial Misc. Notes – 5/18/2023; Criminal Trial Misc. Notes – 5/30/2023.

Second, unlike in *Padilla,* not only did the defense here never request a mistrial, but it was the very party that requested the curative instruction to begin with. N.T. 5/30/2023, p. 149. Moreover, without wavering in its decision, this Court immediately gave the defense the precise cure it asked for. *Id.* at p. 150.

Third, this Court's cautionary instruction directly targeted the comment made by Detective Brookes and specifically instructed the jury to disregard it. Immediately after sidebar, this Court instructed the jury as follows:

> THE COURT: All right. Ladies and gentlemen, you've heard testimony from the detective that he received a car key from the prison. You are not to draw any inference, certainly any adverse inference against the defendant from the fact that he may or may not have been in custody, and the fact that the key was received from that source.

*Id.* at p. 151. When given the opportunity to supplement the instruction, defense counsel declined. *Id.* Accordingly, far from the vague instruction in *Padilla,* this Court's instruction specifically

---

[10] The closest this Court came to such a ruling was its preclusion of any portion of the police body camera footage referencing Appellant's pre-existing warrant. N.T. 5/30/2023, p. 22.

14

identified the improper comments and clearly precluded the jury from drawing any adverse inference therefrom. *Id.* at 1193. Appellant provides no basis to believe the jury did not or could not follow the Court's instruction.

Finally, rather than retreading ground laid by the challenged testimony, the Commonwealth here immediately abandoned that line of questioning and redirected Detective Brookes elsewhere. In sum, the comment by Detective Brookes was a passing remark in no way elicited by the Commonwealth or taken advantage of by it. This Court is satisfied, therefore, that under the totality of the circumstances, its instruction to the jury was sufficient to cure any risk of prejudice such that mistrial was unnecessary. Accordingly, this Court did not err in failing to declare a mistrial.

### D. This Court Did Not Err in Not Declaring a Mistrial When the Commonwealth Allegedly Published Body Camera Footage of Appellant Being Arrested Because Defense Counsel Neither Objected Nor Moved for Mistrial.

Appellant's third issue likewise challenges this Court's failure to declare a mistrial following an alleged publication to the jury of body camera footage from Appellant's arrest. As noted above,

> [a] mistrial is necessary only when "the incident upon which the motion is based is of such a nature that its unavoidable effect is to deprive the defendant of a fair trial by preventing the jury from weighing and rendering a true verdict." *Commonwealth v. Parker*, 957 A.2d 311, 319 (Pa.Super.2008), *appeal denied*, 600 Pa. 755, 966 A.2d 571 (2009). A mistrial is inappropriate where cautionary instructions are sufficient to overcome any potential prejudice. *Id.*

*Lopez*, 57 A.3d at 83-84 (quoting *Bedford*, 50 A.3d at 712-13). Where a defendant does not object, Pa.R.Crim.P. 605 nonetheless empowers the trial court "to declare a mistrial *sua sponte* upon the showing of manifest necessity." *Kelly*, 797 A.2d at 936.

Initially, it is doubtful that the jury actually observed what Appellant claims. The only source through which the jury could have observed photographs or videos of Appellant in

15

handcuffs was Officer Owen's body camera footage of Appellant's arrest. This video was the subject of one of Appellant's pre-trial motions where he argued for its preclusion on prejudice grounds. N.T. 5/30/2023, pp. 20-21. This Court ultimately deferred ruling on the motion to permit the parties to further discuss the intended use of that footage. *Id.* at 22-23.

Prior to Officer Owen's testimony, the parties reached what the defense called "a reasonable agreement" by which the Commonwealth would not publish the portions of the video showing Appellant being cuffed. *Id.* at pp. 122-24. Instead, the Commonwealth would only play Officer Owen's initial contact with Appellant, and the Trailblazer key being found on his person. *Id.* Later, when the Commonwealth sought to submit and publish the video during Officer Owen's testimony, defense counsel did not object, provided it was done in accord with their agreement. *Id.* at p. 129. The Commonwealth then published the video without defense objection.

Thus, by all appearances, the Commonwealth observed its end of the bargain and skipped Appellant's actual arrest. Insofar as the portions published did portray Appellant in handcuffs, however, the issue should have been addressed at or after trial, not for the first time on appeal. *See,* Pa.R.A.P. 302(a) ("[i]ssues not raised in the trial court are waived and cannot be raised for the first time on appeal").

### E. This Court Did Not Abuse its Discretion in Sentencing Appellant to Eighteen (18) to Thirty-Six (36) Months' Incarceration Because the Sentence is Supported by the Record.

Appellant's final issue challenges his sentence as excessive and insufficiently considerate of his mitigating evidence. In matters of sentencing, "great weight [must be given] to the sentencing court, since it is in the best position to evaluate the defendant's character, displays of remorse, defiance, indifference, and the overall nature and extent of the crime." *Commonwealth v. Jackson,* 585 A.2d 36, 41 (Pa. Super. 1990) (internal citations omitted). "When imposing a

16

sentence, a court is required to consider the particular circumstances of the offense and the character of the defendant." *Commonwealth v. Hill*, 210 A.3d 1104. 1116-17 (Pa. Super. 2019).

A sentencing court is also required to consider the sentence ranges set forth in the Pennsylvania Sentencing Guidelines. *See, Commonwealth v. Yuhasz*. 923 A.2d 1111. 1118 (Pa. 2007). However, the trial court may deviate from the recommended guidelines: they are "merely one factor among many that the court must consider in imposing a sentence." *Id.*

Initially, this Court notes that an appellate court may only consider facts which have been duly certified in the record on appeal. *Commonwealth v. Williams*. 715 A.2d 1101. 1105-06 (Pa. 1998). Where review depends upon facts not present in the record. the claim is waived. *Id.* Here, Appellant argues that this Court issued an excessive sentence and failed to adequately consider his mitigation evidence. However, Appellant neglected to secure transcripts from his sentencing on August 15, 2023. Accordingly, this Court is unable to evaluate the factors cited by it on the record or review its consideration of Appellant's supposed mitigation evidence. Appellant's sentencing challenge is therefore waived.

In any event, the challenge is also substantively meritless. Here. Appellant was sentenced to no less than eighteen (18) to no more than thirty-six (36) months' incarceration. with time-served credit for seventeen (17) months. His minimum sentence of eighteen (18) months was within the standard guideline range of twelve (12) to eighteen (18) months. His sentence, therefore, is presumptively reasonable. *Commonwealth v. Ventura*. 975 A.2d 1128. 1134-35 (Pa. Super. 2009).

Moreover, at the time of Appellant's conviction, this Court not only granted Appellant's request for a thirty (30)-day deferral to gather mitigation evidence. it also extended Appellant the grace of remaining on bail in the interim. N.T. 5/31/2023, p. 123. However. Appellant abused this

17

grace and failed to appear as directed for his July 6, 2023 sentencing. For at least these reasons, in addition to those cited by this Court on the record at sentencing, Appellant's sentence was more than appropriate.

## IV. CONCLUSION

For the aforementioned reasons, this Court believes that the issues which Appellant has complained of in his Concise Statement are without merit. Accordingly, this Court respectfully submits that its denial of Appellant's May 8, 2023 suppression motion, its trial decisions, and its August 15, 2023 judgment of sentence should be affirmed and that Appellant's Appeal be denied.

BY THE COURT:

JEFFREY L. FINLEY, J.

DATE: June 4, 2024

18